PER CURIAM.
Garland Ray Maples and William Clarence Osteen, defendants below, appeal from the judgments and sentences entered pursuant to jury verdicts finding them guilty of aggravated assault and robbery.
It is admitted by the appellee that the convictions were based upon circumstantial *737 evidence. The facts generally are that James Burch, the victim of an assault and robbery, was in a bar with some friends at about dusk one evening. He paid his bill and left through a rear door to the parking lot. After he entered his car, he heard something hit the car window, was showered with glass, and almost immediately rendered unconscious. Although not able to positively identify his assailant or tell whether he was white or colored, Burch stated that his assailant was a man who was shirtless. At the time of the attack, Burch testified, he had approximately $90.-00 to $100.00 in his wallet.
A witness testified that during the midst of the attack she was leaving an adjacent bar and observed a man approximately S'S" tall, with “lots of bushy dark blonde to light brown hair,” well-proportioned in build, wearing a beige shirt and dark pants, swinging an object longer than his arm, and breaking the front window of an automobile. She noticed no other person near the car, other than the man breaking the glass, but stated that there could have been someone else there, as she stayed only long enough (about 5 to 8 seconds) to see two blows struck, and immediately went back into the adjacent bar. She could not identify either of the defendants as the attacker, nor could she tell whether the attacker was white or Negro. It was later established that on the day in question the defendant Maples had long dark blonde hair and fitted the general description given by this witness.
The defendants were playing pool at the same bar on the evening in question. Shortly after Burch left the bar, the defendants took off their shirts, left them on the pool table or stool, and went out the back door of the bar. Osteen was apparently carrying a cue stick as he left. About ten minutes later they returned to the bar, put on their shirts, and were there when the police arrived. The police arrived at the scene, and found Burch lying unconscious in his car and bleeding profusely. The car door window on the driver’s side had a hole knocked in it and glass was shattered on the inside and outside of the car. The bottom portion of a large broken cue stick, imbedded with glass, was lying on the floor board of the car, and the top portion of the cue stick was found in a restroom in the bar. It is not certain that this was the same restroom in which Osteen was subsequently located. Maples’ palm print was found on the cue stick. The police testified that Osteen was highly intoxicated and in the ladies’ restroom in the bar when they arrived, and that Maples was found in the stockroom of the bar.
Both defendants had spots of human blood on their pants when the police arrived. There was a conflict in the testimony as to whether the blood was dry; however, two of the officers testified that the blood was fresh. Some of the officers testified that Osteen had several fresh cuts and scratches on his hand and upper forearm. His mother testified that she had observed blood on her son’s pants the day before he was arrested. A friend also made the same observation; however, his credibility was impeached when he admitted conviction of a previous crime and stated that he had appeared voluntarily, without subpoena, to testify for Osteen.
A twelve year old boy who lived adjacent to the bar was called as a witness and testified that on the day following the incident he found Burch’s wallet containing various identification papers, but it was empty of any money. There was no testimony that any of the money or proceeds from the robbery were found on either of the defendants.
The jury returned a verdict of guilty and the defendants were sentenced to fifteen years in the State penitentiary for robbery and five years for aggravated assault, their sentences to run concurrently. This appeal followed.
The defendants contend that there was not sufficient circumstantial evidence to *738 sustain the convictions of aggravated assault and robbery. The cases setting forth the law as applied to circumstantial evidence in criminal cases are legion, and it is not necessary to restate the doctrine here. See: 13 Fla.Jur. Evidence § 417, at 416.
A careful review of the transcript shows that the circumstantial evidence herein was sufficiently competent and substantial to convict the defendants of the crime of aggravated assault, hut not of robbery. The victim’s wallet, with the money missing, was not discovered until approximately twenty-four hours after the assault. There was no evidence to infer that the alleged assault and theft were committed simultaneously. While the circumstantial evidence indicates a strong suspicion or probability that these defendants committed the robbery, it is not beymnd and to the exclusion of a reasonable doubt. The burden was in the State to prove every essential element of the crime charged [robbery] beyond a reasonable doubt. It is reasonable to assume that the defendants were searched after their arrest and yet there is no evidence in the record as to what property the defendants had in their possession. The record does not reflect that the defendants’ fingerprints were found on the wallet. It is possible that the contents of the wallet could have been removed by someone other than the defendants after the assault and prior to its discovery some twenty-four hours later.
The evidence of robbery here is not inconsistent with other reasonable hypothesis of innocence, and does not point directly and unerringly to the guilt of the defendants beyond a reasonable doubt.
For these reasons, the judgments and convictions of the defendants for aggravated assault are affirmed, and the judgments and convictions of the defendants for robbery are reversed and the defendants discharged from that cause.
It is so ordered.