Floyd PRICE, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT and Jim Smith, Respondents-Appellees.

No. 83–3447.

United States Court of Appeals, Eleventh Circuit.

May 13, 1985.

John D. Middleton, Gainesville, Fla., for petitioner-appellant.

Margene Roper, Asst. Atty. Gen., Port Orange, Fla., for respondents-appellees.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

Asserting that he was not competent to stand trial at the time he pled guilty to

first degree murder in Florida, Floyd Donald Price appeals the denial of habeas corpus relief from his life sentence. Although there may be some question as to whether the district court properly applied the 28 U.S.C.A. § 2254(d) presumption of correctness to the state court's finding of competency, an independent review of the record, giving proper deference to the state court's credibility choices and findings of historical facts and the district court's findings at an evidentiary hearing, reveals that the denial of habeas corpus relief must be affirmed.

On March 15, 1974, Price was indicted for first degree murder. He pled not guilty on March 27, 1974. On the basis of reports from psychiatric examinations, however, the state court found Price incompetent to stand trial on September 18, 1974 and committed him to the Division of Mental Health at the Florida State Hospital, where he remained until March 12, 1976.

On April 29, 1976, two years after Price's indictment, a competency hearing was held before the same state court judge and Price was then adjudicated competent to stand trial. On May 4, 1976, Price entered a guilty plea that had been negotiated by his attorney. The court accepted the plea after questioning Price as to his awareness of what he was doing and pursuant to the plea bargain sentenced him to life imprisonment for a minimum period of 25 years before becoming eligible for parole.

Six years later, Price commenced this habeas corpus action in federal court after the state court had denied without an evidentiary hearing his motion to vacate the conviction. The district court had before it the entire record of the 1976 state court competency hearing, at which the court had found that Price at that time was in fact sane within the contemplation of Fla.R. Cr.P. 3.210 and able to aid and assist his counsel and stand trial. The district court held this finding to be entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d). After examining the state record, the court then concluded that the state court finding was adequately and fairly supported by the record and that the facts were adequately developed before the trial judge. Noting that none of the other

criteria listed in section 2254(d) were urged upon the court, the district judge then concluded it was bound by the state trial judge's finding of fact, unless that finding was shown by convincing evidence to be erroneous. After an evidentiary hearing, the district court concluded that petitioner had not shown by convincing evidence that the trial judge's finding as to petitioner's competence was erroneous.

There is some confusion as to whether the district court should have used this approach, or should have treated the question as one of mixed law and fact which requires a more independent review. The ultimate issue of competency has been treated as a mixed question of law and fact. *Drope v. Missouri,* 420 U.S. 162, 174–75, 175 n. 10, 95 S.Ct. 896, 905 n. 10, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 385–86, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *Bruce v. Estelle,* 536 F.2d 1051, 1058–60 (5th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *United States v. Makris,* 535 F.2d 899, 907 (5th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

Often it is said that decisions of mixed law and fact are not entitled to the section 2254(d) presumption. *See, e.g., Strickland v. Francis,* 738 F.2d 1542, 1550 n. 16 (11th Cir.1984); *United States ex rel. Rivers v. Franzen,* 692 F.2d 491, 497 (7th Cir.1982). It would seem that the better approach on such "mixed" questions, however, is to analyze what part is law and what part is fact. *See Strickland v. Francis,* 738 F.2d at 1551 n. 16. There would seem to be no reason why the part that is fact should not be entitled to the presumption.

A competency determination, as a mixed question of law and fact, has two components. The legal standard, what a person must know or be able to do in order to be competent, is whether a defendant "has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

*Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The factual question is whether the defendant knows or is able to do what is required by the law. The ultimate decision that a person is competent, then, is a determination which the federal court need not presume correct because that decision alone does not tell what law was applied and what facts were found in that decision. When the state court articulates the right law, however, and then finds that the defendant knows or has the ability to meet the legal standard, that finding should be deemed correct if the underlying facts upon which the state court based its decision are fairly supported by the record. In assessing those underlying facts, the federal court should usually defer to the credibility choices of the state court.

The Supreme Court, in a summary disposition without oral argument, has recently suggested that section 2254's presumption of correctness may be applicable to a state court's finding of competency. *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). In a per curiam opinion joined by five justices, the Supreme Court reversed a Fifth Circuit decision which had held that the habeas corpus petitioner was entitled to relief because the record did not support the state court's conclusion that petitioner was competent to stand trial. The Court cited 28 U.S.C.A. § 2254(d)(8) in support of its holding that "[b]efore a federal habeas court undertakes to overturn factual conclusions made by a state court, it must determine that these conclusions are not 'fairly supported by the record.'" *Id.* at 117, 103 S.Ct. at 2264. Four justices criticized the majority for departing from established precedent by indicating that section 2254(d) should be applied to the ultimate issue of competency instead of treating the issue as a mixed question of law and fact subject to plenary review. *Id.* at 118–20, 103 S.Ct. at 2264–65 (White, J., concurring in the judgment); *id.* at 120, 103 S.Ct. at 2265 (Brennan, J., dissenting); *id.* at 120–21, 103 S.Ct. at 2266 (Marshall, J., dissenting). There is no indication in the dissenting opinions, however, that a bifurcated analysis was made.

■ *Maggio v. Fulford* should be read to require the application of section 2254(d)'s presumption of correctness to a state court's findings of underlying historical facts on a competency issue. At the same time, the ultimate decision is reviewable to the extent that a principle of law is involved. With both the state court and the federal court applying the same law, however, the decision should be the same. As the *Maggio v. Fulford* Court said, "[t]here is no dispute as to the proper legal standard to be applied for determining the correctness of the trial court's actions." *Id.* at 116, 103 S.Ct. at 2263 (citations omitted). *See Patterson v. Cuyler,* 729 F.2d 925, 931–32 (3d Cir.1984) (reading *Maggio v. Fulford* to lead to an "inescapable conclusion ... that 'factual' conclusions based on questions of historical fact are subject to the presumption in section 2254(d) even when the ultimate issue is characterized as a mixed question of fact and law"). Thus, the federal court should make an independent review of the record to determine whether the historical facts found by the state court support its ultimate finding of competency.

■ In reviewing any findings of fact by another court, it is important to know the burden of proof requirements in that court. Because the state court initially committed Price to the state hospital on the basis of psychiatric evaluations, there is some question as to whether the state or Price had the burden of showing Price's competence or incompetence at the state competency hearing and the district court evidentiary hearing. If Price had been adjudicated insane, the state would have the burden of proving he had become sane. In *Eason v. State,* 421 So.2d 35 (Fla.Dist.Ct. App.1982), the court held that "[w]hile there is ordinarily a presumption that a person is sane, where the accused has been previously adjudged insane, there is a presumption he is still insane." *Id.* at 36. In *Eason,* the defendant had been adjudicated insane by a Michigan court and committed to a state mental hospital, from which he had escaped to commit the crimes at issue. In such cases, the state must overcome the

presumption that the defendant is still insane and thus incompetent to stand trial or plead guilty. But under Florida law an order holding a defendant incompetent to stand trial and temporarily committing him to a hospital for treatment does not give rise to the presumption created by mental competency adjudications entered in civil commitment proceedings. The current statutory provision specifically provides:

·An adjudication of incompetency to stand trial shall not operate as an adjudication of incompetency ... for any other purpose, unless specifically set forth in the court order.

Fla.Stat.Ann. § 916.13(2). The statutory language clearly indicates that such an adjudication does not give rise to the presumption. Thus, Florida courts have clearly held that at subsequent competency hearings in criminal trials the burden of proving incompetency remains with the defendant. *See Johnson v. State,* 440 So.2d 464, 465 (Fla.Dist.Ct.App.1983), *pet. for rev. denied,* 449 So.2d 264 (Fla.1984); *King v. State,* 387 So.2d 463 (Fla.Dist.Ct.App. 1980); *Flowers v. State,* 353 So.2d 1259, 1260 (Fla.Dist.Ct.App.1978); *cf. Eierle v. State,* 458 So.2d 442, 444 (Fla.Dist.Ct.App. 1984) (holding that defendant's insanity acquittal entered in prior criminal proceedings did not create a presumption of insanity, as distinguished from cases where criminal defendants had been previously adjudicated incompetent in a civil commitment proceeding). Consequently, in the state court hearing at the time of his guilty plea the burden was on Price to show by a preponderance of the evidence that he was incompetent. In federal district court, this burden of proving the fact of his incompetence when he entered his guilty plea would not change. Generally, a habeas corpus petitioner becomes entitled to an evidentiary hearing by proffering clear and convincing evidence that raises a substantial, threshold doubt about competency at the time of the guilty plea. *Lokos v. Capps,* 625 F.2d 1258, 1261 (5th Cir.1980); *Reese v. Wainwright,* 600 F.2d 1085, 1091 (5th Cir.) *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979); *Zapata v. Estelle,* 585 F.2d 750, 751 (5th Cir.1978) (*en banc* ). He must establish that he had no state court competency hearing or, if he had one, that it was inadequate. *See Martin v. Estelle,* 583 F.2d 1373, 1374 (5th Cir.1978). At the ensuing district court hearing, petitioner bears the burden of proving the fact of incompetency by a preponderance of the evidence. *Zapata,* 585 F.2d at 752; *see also Pride v. Estelle,* 649 F.2d 324, 327 n. 6 (5th Cir. Unit A June 30, 1981); *Bruce v. Estelle,* 536 F.2d 1051 (5th Cir.1976).

A review of the record, which includes evidentiary hearings before both the state trial court and the district court, reveals sufficient support for the finding that Price failed to prove he was not competent to plead guilty. At the state competency hearing, the state presented the testimony of Dr. J. Lloyd Wilder, an experienced psychiatrist. Dr. Wilder had originally examined Price in 1974. On the basis of three one-hour meetings with Price shortly before the 1976 competency hearing, Dr. Wilder testified that Price could understand the charges against him and could cooperate with his attorney. He testified that Price could understand the trial proceedings in a limited but adequate way even though he was at the low end of the normal range of intelligence levels. Dr. Wilder also opined that Price was feigning to a certain extent the seriousness of his mental illness, indicating that Price appreciated the seriousness of the charges against him.

The defendant offered no witnesses at the competency hearing. At the conclusion of Dr. Wilder's testimony, the court made the following finding:

Although minimally, a person who is minimally competent is within the framework of sanity: The Court finds that the Defendant, Floyd Donald Price, at this time is, in fact, sane within the contemplation of RCrP 3.210, and is able to aid and assist his counsel and stand trial....

At the plea hearing on May 4, 1976, after questioning Price and his father and sister, the court accepted Price's guilty plea and pronounced sentence.

At the evidentiary hearing before the district court on May 17, 1983, Price presented the testimony of Dr. George W. Barnard, another experienced psychiatrist. Dr. Barnard testified that the evidence he reviewed was inadequate to permit him to determine whether or not Price was competent to stand trial on April 29, 1976. In forming this opinion, Dr. Barnard reviewed Dr. Wilder's testimony, the transcript of the state plea hearing, and a 1976 clinical summary from the Florida State Hospital which was in the record but not in evidence. Unlike Dr. Wilder, Dr. Barnard did not conduct direct conferences with Price, nor did he consult with Dr. Wilder regarding the substance of Dr. Wilder's interviews with Price.

Price himself then testified that he was unable to recall any interviews with Dr. Wilder or the 1976 plea hearing. The district court expressly found Price's testimony unworthy of belief.

The state then presented Barry A. Cohen, Price's counsel at the 1976 state court proceedings. Cohen testified that he met with Price between the April competency hearing and the May plea hearing to review the charges against him. Although Cohen recalled that on one occasion Price appeared to be in a stupor, Cohen testified that generally Price's demeanor was appropriate and that Price knew what he was doing when he changed his plea. Cohen also testified that he had attended oral argument in the United States Supreme Court dealing with the Florida death penalty statute shortly before the plea hearing and had inferred from the justices' comments that the Florida statute would be upheld. This had led him to decide that it would be prudent for Price to tender a guilty plea before the Supreme Court rendered a decision, because if Price were declared competent at some time after such a decision the trial court might be less likely to approve a plea bargain under which Price would be sentenced to life imprisonment. For this reason, Cohen did not press Dr. Wilder on the competency issue, even though he believed that the doctor's testimony was potentially vulnerable.

Price then called his brother, mother, and father as rebuttal witnesses. His mother and brother testified that they had visited Price on several occasions between February and April 1976 and had observed him to be "confused" at times. His father stated that on one visit Price went to pieces after his father explained the circumstances of his case, but that he later calmed down and ultimately understood the explanation provided by his father. His father also stated that he had felt his son should plead guilty and that his son had agreed to plead guilty.

Thus, before the state court a psychiatrist testified that Price was able to do those things necessary to satisfy the correct competency standard, testimony upon which the trial court relied. In the district court, a psychiatrist testified the state court record was inadequate for him to determine whether or not Price was competent at the time.

On a complete independent review of the record we conclude that Price has failed to show by a preponderance of the evidence that he was not competent to plead guilty in April and May of 1976 under the standard of *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Whether Price's proof in the district court is viewed as an attempt to show the state court record was inadequate, or as an attempt to show Price was incompetent, it fails to meet the standard required for relief.

The 1976 state competency hearing was held before the same state judge who had originally found Price incompetent and committed him to the state hospital. The only evidence at the competency hearing was Dr. Wilder's testimony, which tended to show that Price was competent to stand trial at that time. The state court was able to observe and to question Price at the plea hearing five days later, and the transcript of that hearing contains no indication that Price did not understand the proceedings against him. Although Dr. Barnard takes issue with Dr. Wilder's conclusion that Price was competent in 1976, Dr. Barnard never interviewed Price as did Dr. Wilder,

and Dr. Barnard relied heavily on a checklist of competency criteria, Fla.R.Crim.P. 3.211(a)(1), that was not adopted until four years after the state court decision.

In any event, Dr. Barnard found that five of the eleven criteria in the competency evaluation were in the acceptable range and that two were in the unacceptable range. Based on his review of the record, Dr. Barnard found the other four factors to be either unknown or questionable, but this uncertainty might well have been dispelled had he had the benefit of direct interviews with Price.

The courts have previously considered the difficulty of holding a meaningful and reliable retrospective hearing on the issue of competency. *Bruce v. Estelle*, 536 F.2d at 1056–58. The corollary is that such a determination made at the time should be more reliable. The district court was entitled to take this into consideration in weighing the evidence in the record and determining the reliability of the state court determination.

Finally, we note that two courts, state and federal, have conducted full evidentiary hearings on the subject of Price's competency. Both of these courts have had the opportunity to observe and question Price. Both have heard expert and lay testimony concerning Price's competency. Both have concluded that Price was competent to plead guilty in 1976. Having reviewed the record, we cannot conclude that these courts both erred in determining that Price was competent.

▮ Price also contends that even if he were mentally competent to plead guilty, the anti-psychotic drugs which he was taking when he tendered his guilty plea rendered him unaware and made the plea involuntary. At the 1976 competency hearing, Dr. Wilder testified that he prescribed two anti-psychotic drugs, thorazine and stelazine, for Price. Dr. Wilder had prescribed a "medium" dosage of thorazine of 500 milligrams per day, but he never indicated at the competency hearing what daily dosage of stelazine he had prescribed.

At the evidentiary hearing in federal court, Dr. Barnard was asked what effect a daily dosage of 500 milligrams of thorazine and 40 milligrams of stelazine would have. This question was based on the mistaken assumption that Dr. Wilder had testified that this was the dosage administered to Price, when in actuality Dr. Wilder never stated the precise daily dosage of stelazine.

This erroneous assumption flaws Dr. Barnard's conclusion that 500 milligrams of thorazine and 40 milligrams of stelazine, an amount he testified was equivalent to 1300 milligrams of thorazine daily, was an extraordinarily high dosage that might have caused Price to become apathetic, to be more likely to accept what was going on around him, and to feel less threatened by his environment.

Absent Dr. Barnard's testimony based on a faulty reading of Dr. Wilder's testimony, there was no evidence before the district court that Price was prescribed drugs that would cause him to fail to understand the plea change proceedings. During those proceedings, the state court asked Price whether his medication had aided and assisted him, to which Price replied, "I feel it's helped me out." This is consistent with Dr. Wilder's testimony that thorazine helped maintain a more organized thought process and reduced delusions and hallucinations, and Dr. Barnard's recognition that in proper amounts the drugs would have a salutary effect. Moreover, there is no evidence whether Price had taken thorazine or stelazine on the day he entered his guilty plea and, if he had, whether the dosage was sufficiently high to affect him adversely. We conclude that Price has failed to present evidence that undermines the trial judge's finding that the plea was voluntarily and knowingly made.

The district court properly held that Price's habeas corpus petition presented no ground for constitutional relief.

AFFIRMED.