Juan **FALLADA**, Petitioner-Appellant,

v.

Richard L. **DUGGER**, Secretary, Department of Corrections, State of Florida, Respondent-Appellant.

No. 86–5185.

United States Court of Appeals, Eleventh Circuit.

June 24, 1987.

Stephen J. Finta, Ft. Lauderdale, Fla., for petitioner-appellant.

Ralph Barreira, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Before GODBOLD and ANDERSON, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

GODBOLD, Circuit Judge:

Juan Fallada was charged by indictment in Florida state court with first-degree murder and robbery. The jury was instructed that it could convict him of first-degree murder under a theory of either premeditated murder or felony murder based on an underlying offense of robbery. The jury found Fallada guilty of robbery and first-degree murder. Because the jury returned a general verdict of guilty of first-degree murder it is not known under which theory it convicted Fallada. On the murder charge the judge sentenced Fallada to life imprisonment for a minimum of 25 years before becoming eligible for parole and on the robbery charge to life imprisonment, the two sentences to run concurrently.

The convictions and sentences were affirmed in *Fallada v. State*, 397 So.2d 384 (Fla.App. 3d DCA 1981). State remedies have been exhausted.

Fallada filed a habeas petition in S.D. Florida. A magistrate recommended that the petition be denied, and Fallada filed objections to the magistrate's recommendation. On defendant's motion, the district court also held a hearing on the issue of competency to stand trial. Based on the reasons stated in the magistrate's report, an independent review of the file, and the arguments asserted during the hearing on the competency issue, the district court denied Fallada's petition.

On appeal Fallada challenges the constitutionality of his convictions of and his concurrent sentences for both first-degree murder and robbery. As grounds for relief he contends that: he was denied due process when the trial court failed to hold a competency hearing during trial; there was insufficient evidence to support his robbery conviction; his convictions of and sentences for both felony murder and the underlying felony of robbery violate double jeopardy; and he was denied a fair trial by the prosecutor's comments during his closing argument to the jury. We affirm.

The victim was found in his apartment bound with twine and with multiple stab wounds in his abdomen and chest. An open wallet was found lying empty next to him. After receiving aid, the victim was taken to a hospital where he died about three months later.

Defendant was ultimately located in Ohio where he made a voluntary, taped confession to a Miami detective. After voluntarily returning to Miami, he made a second admission on videotape. Both confessions were heard by the jury at trial. In the two confessions Fallada told this story: After meeting the victim at a pinball place he accompanied him to the victim's apartment. The victim made a homosexual advance on him, which Fallada reacted to by objecting and pushing him away or hitting him. When the victim kept talking and swung at Fallada, he responded by pulling out a knife and the next thing he remembered was standing beside the tied-up victim with a knife in his hand and blood all over him. He then got scared and, after taking money out of the victim's wallet, the victim's camera, watch, ring and car keys, ran from the apartment and fled in the victim's car. After parking the car he threw the keys into the bay. He later wrapped in a t-shirt the knife and all of the items he had taken from the victim, except for some of the money, and threw them into the Miami River.

Prior to trial defendant's counsel requested that Fallada be given a psychologi-

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

cal evaluation and the court agreed. He was examined by three psychiatrists, all of whom concluded that he was competent to understand the nature of the proceedings against him and to assist counsel in the preparation of his defense. Dr. Jacobson noted that Fallada was receiving Trilafon, which could be helping to maintain his organization and to control latent psychotic symptomatology. Nevertheless he felt that Fallada was able to assist counsel and understand the nature of the charges against him. After reading the three reports and discussing them briefly with counsel, the trial judge ruled that Fallada was competent to stand trial.

On the morning of the second day of trial the judge was informed that Fallada had suffered some kind of "seizure" or had "passed out" the night before. The judge personally asked the defendant about the seizure and about how he felt that morning. Fallada responded saying that the food he had eaten the night before had made him dizzy and that he had passed out but that he did not have a history of passing out. The court said that it would take short breaks during the day to help him out. Defense counsel raised the question of whether the health of the defendant rendered him unable to continue the case and noted that in his opinion Fallada did not have the ability to properly make judgments and decisions. The court responded:

> I have noticed you discussing with him and I noticed that he has responded each time you have discussed with him, and I am satisfied at this point that he is able to communicate with you, and I am satisfied that at this particular instance it is not any recurring thing. It is something that is a combination probably of nervousness over the case and the food and all that, and we are going to go along with it.

The court then said that it would have Fallada checked during the lunch break. After the break the state attorney asked the judge about the evaluation that was to have taken place. The court stated that Fallada was on medication and was going

to see his doctor the next day, and the judge advised Fallada to be sure to take his medications. The court declined defense counsel's request to have it noted for the record what medication Fallada was on, saying that he already had evaluations in the case.

The following day defense counsel informed the court that Fallada had informed him that he had been given a prescription the previous day for "Thorazine" or "something that sounded like Thorazine" and again voiced concerns about his client's condition stating that Fallada was not able to make intelligent decisions. The trial judge said that he had seen defense counsel consult with Fallada, that he appeared responsive and attentive, and that he had noticed nothing unusual about Fallada during any of the time that he had been before the court:

> I have had conversations with him as well, and he has indicated yesterday that he was all right, and I haven't seen any indication during the course of this trial that he has been anything less than attentive, responsive to you, and so there is no indication that he has any problem.

The court then denied defense counsel's request for a continuance so that Fallada might receive a psychological evaluation to insure his competency.

The trial proceeded and Fallada was convicted of and sentenced for first degree murder and robbery.

## I. HEARING ON COMPETENCY TO STAND TRIAL

 Fallada asserts that the trial court denied him due process by failing to hold an additional competency hearing during his trial when it discovered that he had suffered a "seizure" or had "passed out" one night during trial and that he had been given medication by prison officials. We hold that Fallada did not present a bona fide doubt as to his competency to stand trial sufficient to require further inquiry into his competency.[1]

---

1. The issue whether the state trial court should

have conducted an evidentiary hearing on the

■ Due process requires that a defendant not be made to stand trial for a criminal charge unless he is mentally competent. *Dusky v. U.S.*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *Hance v. Zant*, 696 F.2d 940, 948 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). The test for whether a defendant is competent to stand trial is whether he "has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S.Ct. at 788.

■ The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 384–86, 86 S.Ct. 836, 841–42, 15 L.Ed.2d 815 (1966). Due process requires that an adequate hearing be held on competency when the evidence raises a "bona fide doubt" as to a defendant's competence to stand trial. *See Drope*, 420 U.S. at 172–73, 95 S.Ct. at 904–05; *Pate*, 383 U.S. at 385, 86 S.Ct. at 842. This court has relied on *Pate* to hold that when a court has a "bona fide doubt" as to a defendant's competence, it must *sua sponte* conduct a hearing on his competence to stand trial.

*See Hance*, 696 F.2d at 948; *Scarborough v. U.S.*, 683 F.2d 1323, 1324 (11th Cir.), *reh'g denied*, 690 F.2d 907 (1982), *cert. denied*, 459 U.S. 1220, 103 S.Ct. 1225, 75 L.Ed.2d 460 (1983). If the trial court ignores a bona fide doubt as to the defendant's competency, *Pate* requires a *nunc pro tunc* competency hearing as long as a meaningful inquiry into the defendant's competency can still be made. *Hance*, 696 F.2d at 948. If such a meaningful inquiry is no longer possible, the defendant must be retried, if found competent, or released. *Id.*

■ To determine whether a *Pate* violation has occurred, a court should consider three factors: (1) evidence of the defendant's irrational behavior; (2) his demeanor at trial; and (3) any prior medical opinion on his competence to stand trial. *Drope*, 420 U.S. at 172, 95 S.Ct. at 904; *Hance*, 696 F.2d at 948. A *Pate* analysis must focus on what the trial court did in light of what it then knew, *Hance*, 696 F.2d at 948, whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency. *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

Fallada was evaluated by three psychiatrists prior to trial, all of whom concluded that he was competent to stand trial. Dr.

---

defendant's competence is distinct from the issue whether the defendant was in fact competent to stand trial. *See Zapata v. Estelle*, 588 F.2d 1017, 1020–22 (5th Cir.1979); *Nathaniel v. Estelle*, 493 F.2d 794, 796–98 (5th Cir.1974). The latter issue can be raised through a request for post-conviction relief even when a bona fide doubt of competency is not raised at trial. *See id.* When the issue of competence to stand trial (as against the issue of the right to a hearing on competency) is raised in a request for post-conviction relief the burden on the defendant is higher:

[A] criminal defendant is entitled to an evidentiary hearing on his claim of incompetency if he presents clear and convincing evidence to create a "real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel...." The standard of proof is high. The facts must "positively, unequivocally and clearly generate" the legitimate doubt.

*Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir.1985) (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir.1973)) (citations omitted), *reh'g denied*, 770 F.2d 1084 (1985) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

Fallada's petition focuses on the failure to conduct an additional hearing and he does not directly raise the issue of his actual competence to stand trial. Possibly he attempted to raise the issue of actual competency to stand trial as he cites cases dealing with this issue and discusses the standard of review for a determination of competency. Regardless, Fallada clearly did not meet this higher standard as he did not even meet the lower standard of raising a bona fide doubt as to his competency, and he therefore is not entitled to an evidentiary hearing on his competency.

Jacobson specifically noted that Fallada was receiving medication, Trilafon, that might be helping to maintain his mental organization and control latent psychotic symptoms. Based on the doctors' reports the court declared Fallada competent to stand trial. No objection was made at trial, on direct appeal, or in Fallada's habeas petition to the adequacy of this hearing or to the court's finding of competency at the time of the competency determination. The only question before this court is that explicitly raised by Fallada both on direct appeal and in his habeas petition: whether new information obtained at trial required further inquiry into his competency.[2]

■ An evaluation of the trial record in light of the three factors set out in *Drope v. Missouri* leads us to conclude that there was no *Pate* violation. Three doctors had concluded prior to trial that Fallada was competent, and there was no evidence presented during trial of "irrational behavior" on his part that cast doubt on the court's original finding of competency or warranted additional inquiry into his competency. Fallada's passing out was not irrational behavior, particularly since Fallada himself said he thought it was the result of food he had eaten. The trial judge found that Fallada's demeanor at trial was not unusual, that he was attentive, responsive and able to communicate and consult with counsel.[3]

■ Fallada argues that when the trial court discovered that he had been given medication while in jail it should have given him an additional hearing. He concedes

that the fact that he was being treated with anti-psychotic drugs did not per se render him incompetent to stand trial, *see Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir.1985); *U.S. ex rel. Fitzgerald v. LaVallee*, 461 F.2d 601, 602 (2d Cir.), *cert. denied*, 409 U.S. 885, 93 S.Ct. 121, 34 L.Ed.2d 142 (1972), and he cites no cases holding that drug allegations by themselves obligate a court to hold an evidentiary hearing on a defendant's competency. The use of drugs is merely a relevant factor in the trial judge's determination. To be entitled to a hearing a defendant must present evidence demonstrating that the dosage given him has affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him. *See Price*, 759 F.2d at 1555. The standard for determining whether a competency hearing is necessary remains the same regardless of whether the defendant is receiving medication. Fallada did not present evidence that raised a bona fide doubt as to his mental capacity to meaningfully participate in his trial and cooperate with counsel. The trial court did not err in failing to conduct an additional hearing into competency.[4]

## II. SUFFICIENCY OF EVIDENCE TO PROVE UNDERLYING FELONY OF ROBBERY

■ Fallada argues that his conviction of first-degree murder cannot stand because it may have been based upon an

2. Fallada did not raise by his petition, nor has he sought to present as a discrete and identifiable issue in this court, the adequacy of the pre-trial competency hearing that was held.

3. A state court's findings of underlying historical facts on a competency issue and the factual conclusions drawn from them are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Price v. Wainwright*, 759 F.2d 1549, 1552 (11th Cir.1985). The trial judge's assessment of the facts underlying the determination of Fallada's competency is therefore subject to § 2254(d)'s presumption of correctness so long as they are fairly supported by the record. *Id.* We find that they are.

4. Fallada also argues that the district court erred in failing to allow him to supplement the record with evidence regarding the medicine he was given during his trial. He bases much of his argument on the contention that a defendant has the right to supplement the record when the facts on which his competency claim is predicated are largely outside of the record and therefore not before the trial judge. *See Sanders v. U.S.*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). This doctrine is inapplicable, however, because the evidence was in fact entered into the record: Dr. Jacobson's psychiatric evaluation noted that Fallada was on Trilafon and the judge was told at trial by defense counsel that Fallada had told him that he had been given Thorazine.

alleged underlying offense of robbery for which there was insufficient evidence.[5] The test in federal habeas cases for a claim of this kind is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to justify any rational fact finder in finding the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 316–19, 99 S.Ct. 2781, 2787–89, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Martin v. Alabama,* 730 F.2d 721, 724 (11th Cir.1984). We hold that the evidence before the jury was sufficient.

■ Fallada says that the evidence of robbery came only from his own confessions and that there was insufficient independent evidence or corroboration of all elements of the offense established by his confessions. Although an accused may not be convicted on his own uncorroborated confession, the corroborated evidence does not have to prove the offense beyond a reasonable doubt "as long as there is substantial independent evidence that the offense has been committed and the evidence proves beyond a reasonable doubt that the defendant is guilty." *Smith v. U.S.,* 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954). While all elements of an offense established by admissions must be corroborated, it is sufficient if the corroboration merely fortifies the truth of the confession without independently establishing the crime charged. *Id.*

> All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the offense "through" the statements of the accused. *Id.*

■ There was sufficient independent evidence of the robbery to corroborate Fallada's confessions. Florida law defines robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault or putting in fear." Fla.Stat. § 812.13(1). It is the contemporaneous or precedent force, violence or inducement of fear that distinguishes robbery from larceny. *McCloud v. State,* 335 So.2d 257, 258 (Fla.1976). The essential facts admitted by Fallada were sufficiently substantiated by the discovery of the victim tied up and stabbed with the wallet lying open and without any money beside the body and by the fact that the victim was alive when Fallada fled the scene. A reasonable juror could have found that the tying up and stabbing of the victim were done to facilitate the robbery and that Fallada's violent attack upon the victim was at least precedent to if not contemporaneous with his taking of the victim's property.[6]

## III. PROSECUTOR'S ARGUMENT TO THE JURY

■ Fallada asserts that he was denied a fair trial by comments made by the prosecutor during his closing argument regarding Fallada's eligibility for parole if convicted of a lesser offense than first-degree murder. "The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Moreover, the appropriate standard of review for such a claim on writ of habe-

---

**5.** Fallada relies on cases holding that a conviction is invalid where two alternative theories are presented and one is found to be unsupported by the evidence. We need not address this issue as we find that there was sufficient evidence of robbery.

**6.** Citing *Maples v. State,* 183 So.2d 736 (Fla. 3d DCA 1966), Fallada argues that robbery requires the coexistence of the intent to steal and the use of force, violence or assault. His reliance on *Maples* is misplaced. In *Maples* the court upheld the conviction for assault but reversed the

robbery conviction on the grounds that there was a reasonable hypothesis of innocence because the wallet was not found for 24 hours after the assault, there was no evidence from which to infer that the alleged assault and theft were committed simultaneously, and there was no direct evidence linking the defendant to the wallet. Here Fallada confessed twice to taking the victim's property while the bound and injured victim lay helpless, and the empty wallet was found next to the victim.

as corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright,* — U.S. —, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). We find that the prosecutor's comments did not deny Fallada a fair trial.

The prosecutor's comments must be viewed in context. They were made in his rebuttal to defense counsel's closing argument and therefore must be evaluated in light of the defense argument that preceded them. Defense counsel first raised the issue of sentencing in his own closing argument. He pointed out to the jury that "first-degree murder is a very onerous burden. It carries a very, very serious penalty. Second-degree murder is a very onerous burden that carries a very, very severe penalty. So does third-degree and manslaughter and robbery and the crimes underneath." He argued that the proper charge for Fallada was something less than first-degree murder. Conceding that the evidence might be sufficient to support a conviction for a lesser charge, defense counsel asked the jury to consider the proper charge and punishment for Fallada. He pointed out that sentencing is in the province of the judge, but noted that "first-degree murder carries a death penalty" and "mandatory minimum sentencing that most people think is the end of your life."

In his rebuttal, in response to these comments by defense counsel, the prosecutor discussed penalties. The prosecutor pointed out that the court could sentence the defendant to as little as probation on every offense other than first-degree murder and that, even if it sentenced him to life imprisonment for one of the lesser included offenses such as second-degree murder, this sentence would be unlike a sentence of life imprisonment for first-degree murder because the defendant would be eligible for parole immediately upon entering prison. Defense counsel objected to these statements on the grounds that the prosecutor's comments concerning parole were "not nec-

essary and not part of the jury's province." The judge overruled the objection, noting that defense counsel had raised the subject of sentencing in his own argument and that the jury would be instructed on sentencing.

The prosecutor continued:

so ... there is only one verdict that ensures that you as jurors have any sort of control over the final disposition of the defendant because all of the other verdicts would mean that the defendant could be placed on probation or could be paroled immediately, aside from the verdict of guilty as to first-degree murder.

I am not telling you this because I think it should influence your vote, but I want you to be aware of it when the Judge explains it.

We agree with the district court that the trial court's ruling did not offend due process. The prosecution pointed out that the judge would instruct the jury about the possible penalties for each of the charges and that it was the jury's duty to disregard the nature of the penalties when deciding guilt or innocence. He clarified the effect of a second-degree murder verdict and the difference between the sentences for the two crimes, rectifying any potentially misleading statements by defense counsel. His comments were responsive to those by defense counsel and were accurate statements of the law as evidenced by the judge's later instructions to the jury that the minimum sentence for each lesser included offense was a period of probation. The judge later instructed the jury as to its duty to reach a verdict based solely on the evidence and the law as given by the court. There was no unfairness rendering the trial a denial of due process.

## IV. DOUBLE JEOPARDY

▮ Fallada urges that the adjudication and sentence for robbery should be stricken because convictions of and sentences for both felony murder and the underlying felony of robbery would violate double jeopardy. We find that there has been no violation of double jeopardy.[7]

---

7. In *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the Supreme

To determine whether dual convictions or dual sentences imposed in a "single trial, single criminal transaction, two offense" case violate double jeopardy we must look first at federal law outlining the principles of double jeopardy. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). In *Whalen v. U.S.*, 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1435–36, 63 L.Ed.2d 715 (1980) the Supreme Court held that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized;" the "dispositive question" is whether the legislature intended to authorize separate punishments for the crimes. "This is so because the 'power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.'" *Albernaz v. U.S.*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (quoting *Whalen*, 445 U.S. at 689, 100 S.Ct. at 1436). "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended ... to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* (footnote omitted).

The question facing the court therefore is what punishment the Florida legislature authorized for a single criminal transaction involving both felony murder and the underlying felony of robbery.[8] The Florida legislature has explicitly indicated its intent on this issue in § 775.021(4), Fla.Stat. (1987):[9]

> Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.[10]

This provision has been interpreted by the Florida Supreme Court in a number of cases addressing the question of when dual convictions or dual punishments in a single trial violate double jeopardy. Although that court's answer has gone through sev-

Court held that a conviction cannot be upheld if (1) the jury was instructed that a guilty verdict could be returned with respect to any one of several grounds, (2) it is impossible to determine from the record on which ground the jury based the conviction, and (3) one of the listed grounds was constitutionally invalid. Because we hold that in Florida convictions of both felony murder and the underlying felony do not violate double jeopardy, we do not need to reach the issue of whether the murder conviction is invalid under *Stromberg*.

**8.** Although the Supreme Court has spoken primarily about cumulative sentences, the focus has been on the "punishment" authorized by the legislature. It is therefore likely that if the legislature determines that a conviction in and of itself is punishment and thus that dual convictions may alone violate double jeopardy, the federal double jeopardy principles will apply. We need not resolve this issue, however, because we find that there has been no double jeopardy violation under Florida law.

**9.** This clear statement of legislative intent renders it unnecessary to apply the *Blockburger* test to determine whether the statutory provisions involved proscribe the "same offense" or whether they proscribe separate offenses which may be separately and cumulatively punished. *See Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679–80; *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**10.** At the time of Fallada's trial this provision read:

> Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed for each criminal offense, excluding lesser included offenses, committed during said criminal episode ...

§ 775.021(4), Fla.Stat. (1976 Supp.). The provision was rewritten in its current form in 1983.

eral permutations,[11] it recently handed down a clear mandate on the very issue before this court:

> We find sufficient intent that the legislature intended multiple punishments when both a murder and a felony occur in a single criminal episode.
>
> We hold that an underlying felony is not a necessarily lesser included offense of felony murder and hereby overrule *Hegstrom.* Therefore, we hold that a defendant can be convicted of and sentenced for both felony murder and the underlying felony.

*State v. Enmund,* 476 So.2d 165, 167–68 (Fla.1985). It is clear, therefore, that Fallada's convictions of and sentences for both felony murder and the underlying felony of robbery do not violate double jeopardy and therefore must stand.

AFFIRMED.

---

**11.** In *State v. Hegstrom,* 401 So.2d 1343, 1346 (Fla.1981), *overruled by State v. Enmund,* 476 So.2d 165 (Fla.1985) the Florida Supreme Court, stating that the underlying felony in a felony-murder is necessarily an offense included within the murder, had held that under *Whalen*'s legislative intent test and this statute, Hegstrom could be convicted of, but not sentenced for, the underlying felony as well as felony murder.

> Although our opinions have not been entirely consistent on whether double jeopardy forbids double convictions as well as double sentencing, the absence of double jeopardy and *Blockburger* constraints in this situation returns our attention to an analysis of legislative intent. Section 775.021(4), of course, expressly bars only multiple sentences. An implication exists that the legislature did not intend to prohibit multiple convictions, one which is bolstered by the designation of robbery and of felony murder as separate and discrete criminal acts.

*Id.* (footnote omitted).

In *Bell v. State,* 437 So.2d 1057 (Fla.1983), limited by *State v. Baker,* 456 So.2d 419 (Fla. 1984), the Florida Supreme Court revisited the issue of whether convictions of both a greater and a lesser included offense violate double jeopardy. Emphasizing the detrimental effects of multiple convictions in a single trial setting, the court found that multiple convictions alone punish multipliciously and concluded that the double jeopardy clause proscribes multiple convictions *and* multiple sentences for both the greater offense and the lesser included offense. *Id.* at 1061. *Bell* was not the last word on this issue, however. In *State v. Baker,* 456 So.2d 419, 422–23 (Fla.1984) the Florida Supreme Court refined its holding in *Bell,* limiting it to "necessarily lesser included offenses." "[T]he statutory language [of § 775.021(4) ] refers only to necessarily lesser included offenses," and does not include permissibly lesser included offenses, offenses that may or may not be included in the offense charged depending upon the accusatory pleading and the evidence presented at trial. *Id.* at 420–21.