[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15387
Non-Argument Calendar
_____

D.C. Docket No. 8:02-cr-00211-SDM-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR M. SAINZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 7, 2012)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Hector M. Sainz appeals his conviction of possessing with intent to

distribute methamphetamine.  21 U.S.C. § 841(a)(1).  Sainz argues that his plea of

guilty was involuntary because he was confused about the basis for his plea.  The United States counters that Sainz waived any challenge to the validity of his guilty plea by failing to object in the district court to the recommendation of the magistrate judge to accept the plea of guilty.  We affirm.

We need not decide whether Sainz waived his right to appeal the validity of his guilty plea, because his challenge to his guilty plea fails under review for plain error.  Under that standard, a defendant must prove that an error occurred that is plain and affects his substantial rights.  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).  If the defendant satisfies those conditions, "we may exercise our discretion to recognize a forfeited error, but only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  Id. (quoting United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993)).

The magistrate judge did not plainly err in accepting Sainz's guilty plea. During his change of plea hearing, where Sainz was accompanied by counsel and assisted by an interpreter who spoke Spanish, Sainz stated that he understood and wanted to waive his right to trial in order to enter a guilty plea.  Sainz had entered a plea agreement with the government, and he acknowledged that the agreement had been translated for his benefit; he had discussed the agreement with his attorney; he understood the contents of the agreement; and he understood the consequences

2

of entering a guilty plea, which included deportation to Mexico. Sainz said that he understood the elements of the offense charged in his indictment; he was guilty of that offense; and the factual proffer in his plea agreement was "true and correct." The proffer stated that Sainz consented to a search of his residence; during the search, officers discovered "approximately 4.5 pounds of Methamphetamine and $7,681" in cash; and Sainz "was knowingly holding and storing the Methamphetamine/drugs for individuals who were going to sell them later, and knew that they were going to sell them."

Sainz gave inconsistent responses when asked if he knew whether the plastic bags found in his house contained drugs and if he knew the quantity of those drugs, but both Sainz and his attorney blamed the inconsistencies on his "confusion" about how to convert the weight of the methamphetamine from grams to pounds. Concerned about Sainz's inconsistencies, the magistrate judge explained to Sainz that he should not plead guilty to a crime of which he was innocent. Sainz said that he "was holding [the methamphetamine]," but the magistrate judge called a recess for Sainz to confer with counsel.

When the hearing resumed, the magistrate judge asked Sainz what he "want[ed] to do," and Sainz responded, "[p]lead guilty." Sainz then acknowledged that he possessed methamphetamine; knew it was an illegal drug; intended to

3

deliver it to someone else; and was pleading guilty because he was "in fact, guilty of the offense." Sainz identifies no controlling authority that would have required the magistrate judge to conclude that his plea was involuntary. Based on this record, the magistrate judge did not plainly err when he concluded that Sainz had knowingly and voluntarily pleaded guilty to the drug offense.

Nor can we say that the acceptance of Sainz's plea affects his substantial rights or seriously affects the fairness, integrity, or public reputation of judicial proceedings. Sainz consented to a search of his home, inside which police officers discovered 2,184 grams of methamphetamine, a loaded .22 caliber pistol, $7,681 in cash, two digital scales, a box of .22 caliber ammunition, and a box of plastic heat-seal bags, which is consistent with distribution as opposed to personal use of the drug. See United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989); United States v. Marszalkowski, 669 F.2d 655, 662 (11th Cir. 1982). And Sainz's confession was consistent with the evidence discovered by the officers. See Fallada v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987). Sainz confessed that he "went up to Georgia and paid $27,000 for five pounds of crank" and "then came back to sell it." The evidence of Sainz's guilt is overwhelming.

We **AFFIRM** Sainz's conviction.

4