UNITED STATES, Appellee,

v.

Specialist Four James L. RIDLEY, Jr., SSN 410–96–2512, United States Army, Appellant.

SPCM 15179.

U. S. Army Court of Military Review.

25 Nov. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Robert D. Ganstine, JAGC, and Captain James S. Currie, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Robert B. Williams, JAGC, Major John T. Edwards, JAGC, Captain Margaret R. LaFrance, JAGC, and Captain Daniel T. Hartnett, JAGC, were on the pleadings for appellee.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Senior Judge:

The appellant was convicted of assaulting his superior noncommissioned officer in the execution of his duties and communicating a threat in violation of Articles 91 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891 and 934 (1976), respectively. The sentence, adjudged and approved, provides for a bad-conduct discharge, confinement at hard labor for six months, and reduction to the grade of Private E–1.

On appeal the appellant raises four assignments of error, asserting: first, that his trial defense counsel and substitute defense counsel violated the attorney-client privilege; second, that the convening authority erred in failing to direct a post-trial inquiry into the appellant's mental capacity to stand trial; third, that the post-trial review was deficient; and fourth, that substitute defense counsel was disqualified to act as surrogate counsel in post-trial matters. We affirm.

I

An attorney has an obligation to protect the confidences and secrets of his client but that obligation is waived when a client calls into public question the competence and integrity of his attorney. *Tasby v. United States*, 504 F.2d 332 (8th Cir. 1974), *cert. denied* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975); *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967). An attorney may reveal privileged matter to the extent necessary in order to protect his professional reputation against such challenges. Similar rules exist between a military lawyer and an accused. *United States v. Allen*, 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957); *United States v. Stith*, 5 M.J. 879 (ACMR 1978). *See also* Mil.R. of Evid. 502(d)(3).

We find no violation of the attorney-client privilege in this case. Here the confidentiality of the attorney-client relationship was breached by the appellant when, in a letter to the general court-martial convening authority, he claimed that he did not receive a fair trial because his defense counsel, Captain H, failed to call two witnesses who the appellant stated could have testified in his behalf. An additional letter was sent to the appellant's congressman repeating that Captain H failed to call two favorable witnesses and further claiming that Captain H had prevented the appellant from testifying.

By affidavit from Captain H, we have learned the following. When informed by the Acting Staff Judge Advocate that he intended to address the appellant's allegation in the post-trial review, Captain H contacted the appellant by telephone in order to discuss the allegations. Captain H explained his course of action at trial and reminded the appellant that he had left the choice about taking the stand up to the appellant. He then informed the appellant that, if he persisted in his claims, the attorney-client relationship would be terminated permitting Captain H to disclose the reasons for his actions. The matter rested with the appellant indicating that he would think about the issues and recontact Captain H.

When the appellant's response was not forthcoming, Captain H wrote a letter to appellant notifying him that he intended to terminate the attorney-client relationship if he had not heard from appellant within ten days. A subsequent telephone conversation between the appellant and Captain H failed to resolve the difference of opinion and Captain H notified the appellant that the attorney-client relationship was terminated.

Only then did Captain H, in a letter addressed to the general court-martial convening authority, explain why he had not called the two witnesses and the advice he had given appellant with respect to appellant's right to testify in his own behalf.

We are satisfied that Captain H's response to appellant's claims was both proper and necessary to dispel any doubts concerning his reputation and integrity. With regard to the appellant's failure to testify, Captain H explained his strong recommendation that appellant not testify. This was based upon counsel's considered opinion that the accused's testimony would conflict with the testimony of defense witnesses and weaken his defense of alibi. Moreover, appellant had a tendency when questioned about the incident to become hostile and argumentative. Finally, Captain H noted

that appellant's perceptions about his trial advocacy were perhaps colored by the appellant's abuse of drugs prior to trial.

■ Although the appellant got more than he bargained for, he may not be heard to complain since Captain H's responses were relevant to the issue at hand. We reject appellant's argument that Captain H was entitled to address only those claims *specifically* addressed to the convening authority. An accused may not with impunity select the battleground and mode of attack and require that his counsel compartmentalize his responses. Captain H was entitled to address additionally those matters the accused raised with his congressman, matters which Captain H might reasonably expect would be made public.[1]

■ In a related argument, appellant asserts that the actions of his substitute defense counsel were contrary to his interests. *United States v. Schreck*, 10 M.J. 226 (CMA 1981). This assertion stems from the substitute defense counsel's action in advising the convening authority that he personally found no merit in appellant's allegations concerning the original defense counsel. We agree that this statement was contrary to his client's interests. Counsel was under no duty to respond to this allegation, and where his impressions differ from those of his client's, he serves his client's interests better by remaining mute. However, as our discussion above indicates, we find no possible prejudice to the appellant. We find it exceedingly unlikely the convening authority would have reached any other conclusion regarding the competence of Captain H's representation. We also note that substitute counsel otherwise acted steadfastly in his client's interests in his thorough rebuttal to the post-trial review.

## II

The appellant contends that his apparent drug use during trial required the convening authority to direct a limited hearing for

---

1. We are aware that such letters often produce congressional inquiries. Such an inquiry is directed to the local command and eventually the convening authority requests an official explanation of the raised complaint.

the purpose of determining whether the appellant was capable of understanding the proceedings against him and intelligently conducting or cooperating in his defense. Paragraph 120d, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev.)). We disagree.

The question is whether it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is required in the interests of justice. This inquiry may be directed by the convening authority or by this Court in its review as a "higher authority." *United States v. Thomas*, 13 U.S.C.M.A. 163, 32 C.M.R. 163 (1962); paragraph 124, MCM 1969 (Rev.).

■ We have examined the record of trial and conclude that no reasonable doubt exists as to any issue of the appellant's ability to participate in his defense and understand the proceedings against him. Cf. *United States v. Brazil*, 4 M.J. 668 (ACMR 1977). In this regard the record reflects that the accused took the stand during the sentencing portion of the trial and responded intelligently to numerous questions concerning his military and civilian past. At trial, none of the parties, including the appellant's own defense counsel, questioned the appellant's ability to follow the proceedings or participate in his defense. Had such questions arisen during trial the parties would have been obliged to stop the proceedings and make an inquiry.[2] The appellant himself does not now directly question his presence of mind at trial.

### III

■ Appellant contends that the staff judge advocate's advice in the post-trial review, *i.e.*, that suspension of the discharge was not warranted "at this time" may have

misled the convening authority about his authority to suspend the discharge. We disagree. The review advised the convening authority that *before* approving the findings and the sentence he had "the independent power and responsibility to consider suspension, as recommended by the court, remission, and commutation of all or part of the sentence adjudged." The staff judge advocate clearly labeled his recommendation that suspension was not warranted at this time as "*my opinion.*" We are satisfied that the convening authority was not thereby misled into believing that he might take future remedial action. However, any conceivable ambiguity in this language was later cleared up in the defense counsel's rebuttal and the addendum to the post-trial review.

### IV

■ We are satisfied that the appellant acquiesced in and knowingly accepted the representation of surrogate defense counsel. Cf. *United States v. Jones*, 4 M.J. 545 (ACMR 1977). The original defense counsel properly advised his client of his rights to counsel under Article 38(b), UCMJ, 11 U.S.C. § 838(b). The military judge iterated these rights at trial. Although it would be better practice, we see no legal or statutory requirement that substitute counsel reiterate these same rights.

■ We also reject appellant's assertion that the surrogate counsel was disqualified because he was the immediate supervisor of the counsel whom appellant alleged to be incompetent. The appellant was aware of the competing interests of his substitute counsel and chose to ignore them. *See* paragraph 48c, MCM 1969 (Rev.). *See also United States v. Catt*, 1 M.J. 41 (CMA 1975).

---

2. Affidavits from the trial counsel and court reporter dispel any doubt that the accused's drug use, if indeed it occurred, affected his powers of concentration at trial. Finding no impairment, we do not reach the issue of the legal effect of voluntary mental incapacitation due to intoxication at trial. We note in passing, however, that it could be likened to a voluntary unauthorized absence which, if it fol-

lowed arraignment, would permit a trial to nevertheless proceed. We are particularly concerned that defeated litigants not be permitted to afterward predicate an appeal upon their claim that they were not at their mental best because, unknown to anyone at trial, they were voluntarily under the influence of a drug unlawfully ingested.

The findings of guilty and the sentence are affirmed.

Judge MILLER and Judge LEWIS concur.