*1284 KRAVITCH, Circuit Judge:
A habeas petitioner contends that his due process rights were infringed when he was tried and convicted in state court for murder while incompetent to stand trial. We hold that petitioner has failed to prove a violation of his procedural due process right to a competency hearing or his substantive due process right not to be tried while incompetent.
I.
In 1987, Carl Eugene Watts was tried in Florida state court and convicted by a jury of second-degree murder. Watts was asleep through much of the five day trial.
On the first day of trial, the judge recorded his initial observation of Watts’s behavior: “I’d also like to make a statement for the record at this time that during the entire voir dire examination that I’ve conducted, since about 3:30 and it’s 20 minutes to 5:00, that the defendant in this ease, Mr. Watts, has been sleeping at counsel table.” Trial tr. at 69.
The next day, after two prospective jurors approached the judge to express concern that Watts’s sleeping would threaten their ability to remain impartial,[1] the judge questioned Watts about the cause of his continuing somnolence:
THE COURT: First thing I’d like to put on the record is that Mr. Watts for the second day in a row has slept through 90 percent of the ... questioning this morning and Mr. Blostein [counsel for Watts] has on occasion had to wake him up. I’m sure the jurors have all seen this. I’d like to ask some questions at this time.
Mr. Watts, are you under the influence of any drugs or alcohol or medication today? WATTS: No, sir.
THE COURT: Is there any particular reason why you are sleeping through this serious trial which is probably going to effect your life?
WATTS: No, sir. I’m not sleeping through it.
THE COURT: You have your eyes closed. You have your head down on your neck or your chest and it seems pretty obvious to everybody in the courtroom that you are sleeping.
Trial tr. at 130-31.
As Watts continued to sleep, the judge initiated a similar colloquy with Watts and his lawyer at least once on each subsequent day of the trial. After estimating the percentage of the recent proceedings through which Watts had slept, the trial judge would ask Watts if he was under the influence of any drugs; Watts always replied that he was not. When pressed for an explanation of his inability to stay awake, Watts on one occasion suggested that he was not sleeping, but praying — a characterization that both the judge and Watts’s attorney strongly doubted. On other occasions, Watts professed to having no explanation for his sleeping, disavowing physical illness, in addition to the use of alcohol, medication, or drugs. In response to a question from the bench, Watts indicated that he had never been treated for mental illness.
Watts’s attorney at one point expressed frustration at his inability to keep his client awake:
MR. BLOSTEIN: For the record, and for my own protection on this, my thought is that Mr. Watts is also sleeping. I have over the last three days had to wake him up on numerous occasions including today and [addressed to Watts] if you were praying you didn’t even notice that I attempted to wake you up.
THE COURT: On one occasion I saw you hit him in the shoulder and he never even moved. He never budged.
MR. BLOSTEIN: Exactly. I’m doing the best I can to represent Mr. Watts under the circumstances he’s putting me in.
Trial tr. at 337-38. Nevertheless, Watts’s attorney never raised the issue of Watts’s competency at trial or requested a competency hearing.
Prior to closing arguments, the judge questioned Watts in an attempt to ensure *1285 that he understood his decision not to testify on his own behalf:
THE COURT: You are doing all right. Okay. You remember last week when your attorney put a couple witnesses on for you; do you remember that?
WATTS: Yes, sir.
THE COURT: I think your mother came in and testified and your sister?
WATTS: Yes, sir.
THE COURT: I want you to understand that you have a right to testify in this case if you want. Now your lawyer indicated to us last week that you were not going to testify and I just wanted to double cheek with you and make sure that that is what you want to do; that you do not want to testify in this ease; is that true?
WATTS: That’s correct.
THE COURT: Have you talked this over with your lawyer?
WATTS: Yes.
THE COURT: Are you satisfied with him as your lawyer?
WATTS: Yes.
Trial tr. at 482.
At the conclusion of the trial, the judge instructed the jury as follows:
Before I get into the instructions, I would like to make a comment about Mr. Watts and his obvious sleeping throughout most of the trial. I don’t know how that affected any of you but I’m going to tell you under your oaths as jurors you must not allow that to affect you in any way. I don’t know why Mr. Watts has slept and you don’t either and no matter what the reason was, even if we did know, that has nothing to do with whether he’s guilty or not guilty of the charge that he’s here on trial for today.
So you must not allow that to affect your decision in this case and I’m going to tell you not even to discuss that in any way during your deliberations.
Trial tr. at 529. Watts could not be awakened to stand as the jury retired to deliberate.
In the interim between conviction and sentencing, Watts was examined by a psychologist. Watts informed her that he had been using drugs for seven years (since he was sixteen)[2] and that he had been smoking crack cocaine during the trial at night while he was out on bond. According to the trial judge, the psychologist attributed Watts’s inability to stay awake at trial to his staying up nights taking crack “as well as thinking and doing a lot of crying.”[3] Watts explained to the psychologist that he had not admitted in court to taking drugs because his relatives were present and he did not want to upset them.
At the sentencing hearing, Watts’s counsel and the judge both said that they had suspected Watts had been taking drugs during the trial. (Given that the parties had agreed before trial not to mention Watts’s use of drugs around the time of the murder, Watts’s counsel and the judge obviously were aware that Watts had used drugs in the past. They also knew that Watts was out on bond during the trial.) Watts himself expressed concern that the jury’s verdict had been influenced by his sleeping:
WATTS: The jury made the decision because of my sleeping disorder---- They figured I didn’t care.
THE COURT: Maybe you’re right. I told them not to regard that and not to consider that in their verdict.
WATTS: But you can’t throw that out of a human mind.
THE COURT: You are probably right, Mr. Watts. See how rational you are talking now. You’ve now got some good judgment. You are thinking rational. Too bad that all this had to happen.
Trial tr. at 584-85.
Watts’s conviction and sentence were upheld on direct appeal, and he is currently incarcerated. Proceeding pro se, Watts filed *1286 a petition for habeas corpus in federal district court in 1994, claiming that, because he slept through most of his trial, he was denied due process as a result of the trial judge’s failure to order a competency hearing and as a result of his trial and conviction while incompetent. A magistrate judge agreed. The magistrate judge issued a report recommending that Watts’s petition be granted and appointed a Federal Public Defender to represent him. The district court adopted the magistrate judge’s report and recommendation and vacated Watts’s conviction and sentence pending retrial by the State. The State now appeals.
II.
The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. A defendant is incompetent if he lacks “sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding” or “a rational as well as a factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (internal quotation marks omitted). As the Supreme Court recently has emphasized,
“Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right of effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one’s own behalf or to remain silent without penalty for doing so.”
Cooper v. Oklahoma, — U.S. -, -, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996) (quoting Riggins v. Nevada, 504 U.S. 127, 139-40, 112 S.Ct. 1810, 1817, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring)). The competency inquiry, then, is a functional one. It focuses on the criminal defendant’s capacity to contribute sufficiently to his own defense to allow a fair trial and, ultimately, serves to protect both the defendant and society against erroneous convictions.[4]
The issue of Watts’s competency to stand trial implicates both the procedural and substantive dimensions of the right. The district court concluded, first, that Watts’s procedural due process rights under Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), were infringed by the state trial court’s failure to conduct a competency hearing on its own initiative and, second, that Watts’s substantive due process rights were violated because he was in fact tried while incompetent. We will address the procedural and substantive claims in turn.[5]
A. Procedural Due Process
Pate established that a criminal defendant’s due process rights are presumptively violated when a state trial court fails to conduct, on its own initiative, a competency hearing in the face of sufficient doubt about the defendant’s competency.[6] This circuit *1287 has derived from Pate the objective standard that, in order to trigger the trial court’s obligation to order a competency hearing, the court must have information raising a “bona fide doubt” as to the defendant’s competency.[7] See James v. Singletary, 957 F.2d 1562, 1570 (11th Cir.1992), cert. denied, 510 U.S. 896, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993); Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir.1987). Relevant information may include evidence of a defendant’s irrational behavior, demeanor at trial, or prior medical opinion; but “[tjhere are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed.” Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975).
In this case, Watts has failed to establish that there was a bona fide doubt as to his competency during the trial. It is true that Watts was conspicuously asleep through a large part of the proceedings: the transcript supports the state appellate court’s finding that Watts “slept through about 70% of his murder trial.” Watts v. State, 537 So.2d 699, 699 (Fla.Dist.Ct.App.1989). But there is no constitutional prohibition against the trial and conviction of a defendant who fails to pay attention in court — whether out of indifference, fear, confusion, boredom, or sleepiness — unless that defendant also cannot understand the nature of the proceedings against him or adequately assist counsel in conducting a defense. We have no doubt, furthermore, that both the trial judge and Watts’s attorney, who were aware of Watts’s history of drug use and his release on bond throughout the trial, suspected that Watts’s sleeping was related to contemporaneous drug use. But even had Watts admitted in open court that he could not stay awake at trial because he was up all night smoking crack, this would not necessarily be sufficient to require a Pate hearing.
In Fallada, this court noted that a defendant’s use of drugs (in that case, prescription drugs) does not, per se, necessitate a competency hearing, but is “merely a relevant factor.” 819 F.2d at 1569. Recognizing the functional focus of the competency inquiry, the court in Fallada stated, “To be entitled to a hearing a defendant must present evidence demonstrating that the dosage given him has affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him.” 819 F.2d at 1569; see also Pedrero v. Wainwright, 590 F.2d 1383, 1387-88 (5th Cir.) (information that defendant was a drug addict insufficient to require Pate hearing), cert. denied, 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979). The fact that a defendant is taking drugs (whether proscribed or prescribed) during trial should alert the *1288 court to a potential competency issue, but need not, in itself, necessitate a competency hearing. Other information may convince the court that a formal hearing is not necessary to be reasonably certain that the defendant has the requisite capacity to understand what is going on around him and to communicate with his lawyer.
Here, the only apparent effect of Watts’s drug use was his intermittent inability to stay awake at trial. When Watts was awakened, he was able to provide, as the state appeals court found, “lucid and not ... irrational” answers to questions from the bench. Watts, 537 So.2d at 699. Certainly, Watts demonstrated his understanding of the proceedings against him, as he repeatedly expressed anxiety about being on trial for murder.[8] There is no reason to believe that Watts could not have engaged in the same sort of coherent colloquies with his attorney about defense strategy as he did with the trial judge about his sleeping problem.
Because legal competency is primarily a function of defendant’s role in assisting counsel in conducting the defense, the defendant’s attorney is in the best position to determine whether the defendant’s competency is suspect. Accordingly, failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that the defendant’s competency was not really in doubt and there was no need for a Pate hearing. See Adams v. Wainwright, 764 F.2d 1356, 1360 (11th Cir.1985), cert. denied, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). (For the same reason, a defense counsel’s request for a Pate hearing must be taken seriously by the trial judge.) In this case, Watts’s attorney did not raise the issue of Watts’s competency or request a Pate hearing. Although he did make the comment, “I’m doing my best to represent Mr. Watts under the circumstances he’s putting me in,” the context of this remark implies that Watts’s attorney was primarily concerned that Watts’s sleeping would prejudice the jury. At no point during the trial did Watts’s attorney suggest that the defense was suffering for lack of Watts’s assistance.
Competency is contextual.[9] A criminal defendant represented by counsel generally has limited responsibilities in conducting his defense:[10] primarily, recognizing and relating relevant information to counsel and making the few trial-related decisions reserved for defendants (i.e., whether to plead guilty, whether to request a jury trial, whether to be present at trial, and whether to testify). The defendant need not participate in the bulk of trial decisions, which he may leave entirely to counsel (how to select jurors, *1289 which witnesses to call, whether and how to conduct cross-examination, what motions to make, and similar tactical decisions). In this case, the judge monitored Watts throughout the trial, in particular confirming that Watts understood and stood by his decision not to testify, and verifying that Watts was communicating with his attorney. See Trial tr. at 482. We might speculate that Watts was unable to be of much use to his attorney in monitoring the testimony of witnesses and providing responsive information that could be useful for cross-examination. If Watts’s attorney had encountered unforeseen or problematic testimony, however, there is no reason to believe that he could not have awakened Watts — requesting a recess if necessary — to explain and discuss the matter.[11] The record reveals nothing to suggest that Watts was incapable of providing the level of input necessary to mount an adequate defense.[12]
The competency determination, because it looks to the capacity of a particular defendant to play a fact-specific role at trial, requires case-by-case assessment. See Drope, 420 U.S. 162, 180, 95 S.Ct. 896, 908 (“There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed.”). Not surprisingly, then, the numerous opinions addressing defendants’ competency from this and other circuits fail to establish a rigid standard of competency that could be applied uniformly across cases. Nor do cases presenting superficially similar facts necessarily dictate the same conclusions as to competency.
For example, in Whitehead v. Wainwright, 609 F.2d 223 (5th Cir.1980), the court affirmed the district court’s conclusion that the habeas petitioner, Whitehead, had been incompetent to stand trial. Whitehead had been agitated and nervous during the first day and the morning of the second day of his two-day murder trial, attempting to discharge his attorney several times and to take part in the cross-examination of witnesses. He was then given an antihistamine and two prescription tranquilizers (two doses of each within two hours). As a result, during the afternoon of the second day of trial Whitehead “seemed drunk, sleepy, staggering, and •glassy-eyed.” He fell asleep in court, his speech was slurred, and later he could not remember making statements attributed to him in the transcript. See Whitehead v. Wainwright, 447 F.Supp. 898, 899-901 (M.D.Fla.1978) (reciting facts).
In this case, Watts displayed none of Whitehead’s pre-medication aberrant behavior. Moreover, whereas Watts could be awakened into drug-free lucidity — as confirmed by the trial judge on each day of the trial — Whitehead was under the chemical influence of drugs during most of the second day of his trial, apparently rendering him unable to comprehend the proceedings or communicate with his attorney even when he was awake. Watts’s situation is simply too dissimilar to Whitehead’s for a meaningful analogy to be drawn.[13] More than this, the *1290 comparison of the two cases only serves to illustrate the need for the competency inquiry to be functional and case-specific, not formalistic and rule-driven.
In sum, we are convinced that the trial judge afforded all the process due to make reasonably sure that Watts was competent to stand trial. Clinical evaluation of Watts in a formal Pate hearing simply was not necessary for the trial judge to make the functional determination that Watts was competent.
This is not to say that the trial judge’s determination was necessarily the correct one, however. Whether Watts was, in fact, competent is a separate question, to which we now turn.
B. Substantive Due Process
Even though Watts was not entitled to a Pate hearing based on the information available at trial, he has an independent due process right not to be tried and convicted while incompetent. See Pate, 383 U.S. at 377, 86 S.Ct. at 838. In asserting this right, the defendant bears the burden of proving by a preponderance of the evidence that he was incompetent at the time of trial. James, 957 F.2d at 1571. We have warned that “ ‘[cjourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner.’” See Sheley v. Singletary, 955 F.2d 1434, 1438 (11th Cir.1992) (quoting Bruce v. Estelle, 483 F.2d 1031, 1043 (5th Cir.1973)). This caution resonates with the difficulty of making competency determinations ex post, as well as with our reliance on the more readily policed procedural dimension of the due process right.
In this case, the only difference between the merits of the procedural and substantive claims is with respect to the relevant factual bases: in determining whether Watts was actually incompetent, we are not limited to the information available to the state trial court before and during trial, as we are in evaluating the procedural claim. See James, 957 F.2d at 1572. For Watts, however, this is not a difference that makes a difference. As discussed previously, even given the fact, revealed at sentencing, that Watts slept through much of his trial as a result of smoking crack at night, the record — devoid of substantial evidence that Watts could not adequately understand the proceedings or assist counsel in his defense— does not unequivocally generate a substantial doubt about his competency to stand trial.
The district court’s grant of the writ of habeas corpus is thus REVERSED.

. Neither of these two jurors was ultimately impanelled.

. Watts had been enrolled in a drug abuse program in 1984.

. The psychologist determined that Watts did not have brain damage; that his intellectual ability was at least average; that he did not exhibit psychosis, hallucinations, or delusions; and that he was not suffering from any major mental illness. Trial tr. at 586-87.

.The ABA has usefully explained the functional, trial-related nature of the competency inquiry as follows:
A finding of mental incompetence to stand trial may arise from mental illness, physical illness, or disability; mental retardation or other developmental disability; or other etiology so long as it results in a defendant's inability to consult with defense counsel or to understand the proceedings.
Because the fundamental purpose of the rule [of nontriability of incompetent defendants] is to promote accurate factual determinations of guilt or innocence by enabling counsel to evaluate and present available defenses to factfinders, defendants should have at least the intellectual capacity necessary to consult with a defense attorney about factual occurrences giving rise to criminal charges. Obviously, to accomplish that, defendants require a minimal understanding of the nature of criminal proceedings, the importance of presenting available defenses, and the possible consequences of either conviction or acquittal.
ABA Criminal Justice Mental Health Standards § 7-4.1(c) & commentary (2d ed. 1986).

. Both of these claims were exhausted in state court, included in Watts’s habeas petition, and decided by the district court.

. The due process violation is only “presumptive” because this circuit has interpreted Pate to allow post-deprivation process to suffice in some circumstances. If the trial court fails to order a competency hearing at trial when one is warranted, the state may still attempt to prove that the *1287 defendant was in fact competent at the time of trial at a nunc pro tunc competency hearing, so long as a reliable inquiry into the defendant’s competency can still be made; the burden is on the state. James v. Singletary, 957 F.2d 1562, 1570-71 & n. 11 (11th Cir.1992), cert. denied, 510 U.S. 896, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993); Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir.1987); Zapata v. Estelle, 588 F.2d 1017, 1020 (1979). If a reliable ex post evaluation is impossible, the defendant must be retried, if then competent to stand trial, or else released. Fallada, 819 F.2d at 1568; Zapata, 588 F.2d at 1020.
The Supreme Court has cautioned, however, that attempts to determine competency retrospectively by means of a nunc pro tunc hearing, even “under the most favorable of circumstances,” face "inherent difficulties” which may render them futile. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); see also Pate, 383 U.S. at 387, 86 S.Ct. at 843 ("[W]e have previously emphasized the difficulty of retrospectively determining an accused’s competence to stand trial, [citation to Dusky, 362 U.S. at 402, 80 S.Ct. at 789] The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record.”).
Given that Watts was tried almost nine years ago, and that his condition at the time of trial— influenced both by his use of drugs and despair over the murder — would be difficult to reconstruct ex post, we agree with the district court that "it is unlikely that a meaningful nunc pro tunc competency hearing ... could be had at this late date.”

. The term "bona fide doubt" comes from the Illinois statute considered in Pate. The Pate Court did not adopt "bona fide doubt” as a constitutional standard; it simply found this state standard to be constitutionally adequate. Nonetheless, the "bona fide doubt” standard has managed to insinuate itself into the opinions of this circuit and is now commonly quoted as the nominal constitutional standard.

. See Trial tr. at 476-77, 484, 556. The dissent points out that Watts "could not have had a factual understanding of the proceedings against him” during the time he was asleep. Without inviting metaphysical debate, we believe it is sufficient that Watts did have such an understanding while he was awake, even if the nature of the proceedings against him was not at all times (sleeping or awake) the focus of his thoughts.

. It is also historical. During the formative period of the competency doctrine in mid-seventeenth century England, virtually all defendants charged with serious crimes represented themselves at trial. See Faretta v. California, 422 U.S. 806, 823, 95 S.Ct. 2525, 2535, 45 L.Ed.2d 562 (1975) ("While a right to counsel developed early in civil cases and in cases of misdemeanor, a prohibition against the assistance of counsel continued for centuries in prosecutions for felony or treason."). This rule remained in effect in England well into the nineteenth century, though it was apparently abandoned in colonial America. See id. at 824-27, 95 S.Ct. at 2536-37. During this period it was obviously critical that the defendant be competent, for his defense at trial was entirely in his own hands. Now that counsel is constitutionally guaranteed in all serious criminal cases, however, the common law basis for expansive competency rights is largely outdated. See Bruce J. Winick, "Incompetency to Stand Trial: An Assessment of Costs and Benefits, and a Proposal for Reform,” 39 Rutgers L.Rev. 243, 260-61 (1987). Modern analysis of the scope of competency rights must be guided not by Blackstone but by a contemporary understanding of the attorney-client relationship. See Richard J. Bonnie, "The Competence of Criminal Defendants: Beyond Dusky and Drope," 47 U.Miami L.Rev. 539, 552-53 (1993); see also Oliver Wendell Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV.").

.Of course, the demands placed on the defendant may vary significantly, depending on the complexity of the case, capacity of counsel, and other factors. The competency inquiry is necessarily fact-specific.

. Thus, the dissent’s concern that our view would "justify the trial and conviction of a defendant who had been rendered comatose on the eve of trial" is baseless. Unlike Watts, such a defendant could show that he lacked the capacity to respond to his attorney’s structured requests for assistance during the course of the trial. (Watts replied rationally to the trial judge’s questions on each day of his trial). And of course a comatose defendant, unlike Watts, would lack the capacity to understand the nature of the proceedings against him during trial.

. The dissent asserts that Watts "was unable to contribute anything at all to his defense during the majority of his trial." This, however, does not differentiate Watts from most other criminal defendants, who likewise contribute nothing to their own defenses through the vast majority of the proceedings.

.Irrespective of the distinguishing facts of Whitehead, the inconsistency among competency cases makes analogizing to a single case somewhat arbitrary. Compare Whitehead with United States v. Rinchack, 820 F.2d 1557, 1564 n. 8, 1568-70 (11th Cir.1987) (no due process problem with trying defendant who suffers from brain damage causing dizziness, seizures, disorientation, inability to think clearly, and amnesia) and Thomas v. Kemp, 196 F.2d 1322, 1325-26 (11th Cir.1986) (Pate hearing not required for defendant who had kept witness locked in closet for a week and jumped on corpse of nine-year-old victim in her presence, exhibited inability to communicate with his attorney before trial, and sat throughout trial with his fist raised in some sort of salute).