**UNITED STATES of America**

**v.**

**Charles Pernell RIDDICK, JR.**

**Civil No. 98–372,**
**Criminal No. 95–00073–02.**

United States District Court,
E.D. Pennsylvania.

July 16, 1998.

**OPINION AND ORDER**

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

On May 24, 1995 Petitioner was sentenced to life for his role in a conspiracy to smuggle drugs into the Lehigh County Prison, where he was then incarcerated. Specifically, a jury convicted Petitioner of Conspiracy to Distribute Cocaine and Marijuana, Possession and Distribution of Cocaine and Marijuana, and Distribution of Cocaine and Mari-

juana Within One Thousand Feet of a School Zone. Petitioner now wishes to collaterally attacks his conviction through a § 2255 motion.

Mr. Riddick raises numerous issues through his petition. He claims that: (1) the government failed to disclose evidence which contradicted one of its witness's (Tereza Cordero) trial testimony; (2) the government failed to disclose that Cordero was a government informant and did not provide the Petitioner agent reports; (3) Petitioner used cocaine and marijuana during the trial and sentencing and therefore was not competent to stand trial, waive his right to testify, or to assist his counsel at sentencing, that the court should have noticed Petitioner's drug use and ordered a competency hearing, and that Petitioner's counsel was ineffective for failing to notice his drug use and request a competency hearing; (4) trial counsel was ineffective for failing to object to an BNI agent Troy Serfass's testimony that Petitioner was serving a two to five year prison sentence in April of 1992, when Petitioner was facing a possible sentence but had not yet been sentenced in the case; (5) trial counsel was ineffective for failing to move for a mistrial after Petitioner's cousin spoke to one of the jurors during the trial; (6) trial counsel was ineffective for failing to examine a witness (Lowy) about his motive for testifying for the government; (7) trial counsel was ineffective for conceding Petitioner's guilt during closing argument; (8) trial counsel was ineffective at sentencing for failing to object to the allegedly untimely filing of an information of prior conviction under 21 U.S.C. § 851; and (9) trial counsel was ineffective at sentencing for failing to object to the drug quantity calculation adopted by the district court. Though Petitioner raises numerous allegations of error, none of them have any merit. Consequently, Mr. Riddick's § 2255 motion will be denied.

## II. DISCUSSION

For the sake of simplicity, we will divide our discussion of Petitioner's claims into those that are based on ineffective assistance of counsel and those which are not.

### A. Non–Ineffective Assistance of Counsel Claims

#### 1. Government's Alleged Failure to Disclose Impeachment Evidence

■ Petitioner claims that the government failed to disclose critical impeachment evidence at trial: that the prosecution's witness, Teresa Cordero, stored drugs at her apartment on more than the one occasion that was disclosed to the Petitioner. Petitioner claims that Cordero's testimony at trial that she only stored drugs at her residence for Kenneth Riddick on one occasion "draws the inference that the government's case includes knowing use of false testimony," since she stored drugs at her residence in June of 1992. Petitioner bases his claims on Cordero's testimony at Kenneth Riddick's trial.

Petitioner's claim is groundless. At Petitioner's trial, Cordero testified that, in the Fall of 1991, Kenneth Riddick obtained an apartment in Cementon for the Petitioner and herself in exchange for their storing Kenneth Riddick's cocaine there. *Tr. 5/18/95* at 141. However, Cordero never testified that she stored Kenneth Riddick's cocaine at her residence in June of 1992, and therefore there is no inconsistency with her testimony at Petitioner's trial. There was an incident in June of 1992 where Kenneth Riddick asked Cordero to go to Shannon Sicher's garage and retrieve a package of cocaine that Kenneth Riddick had hidden in a drain pipe. Cordero testified about this unrelated incident at Kenneth Riddick's trial. *Tr. 12/5/96* at 137–145. Cordero was not aware of the cocaine until Kenneth Riddick informed her of it. The witness picked up the cocaine, but turned it over to detectives rather than to Riddick. *Id.* at 144. Cordero did not, as Petitioner claims, store this cocaine in her residence and this incident is not inconsistent with her testimony at Petitioner's trial. Therefore this information is not impeachment material that reflected on Cordero's credibility.

#### 2. Government's Alleged Failure to Disclose Cordero's Informant Status

■ Petitioner also attacks the government for allegedly failing to disclose the fact

that Ms. Cordero was a confidential informant either prior to or by April 15, 1992. Petitioner claims that if Cordero were a confidential informant, then he could not have conspired with her. Petitioner also asserts that he was entitled to reports any meetings Ms. Cordero may have had with the government. These arguments, however, are meritless.

On February 8, 1992, Petitioner was arrested on a prole violation. Petitioner begged Cordero to "do something" to cooperate with the police to get him out of prison. *Tr. 12/5/96* at 137. Petitioner himself had already been unsuccessful in cooperating with law enforcement. *Id.* at 138. On April 15, 1992 Ms. Cordero spoke to some government agents about cooperating on behalf of the Petitioner. *Id.* at 137–138, 141. These agents asked Ms. Cordero to assist them in seizing cocaine. Ms. Cordero gave them information about Kenneth Riddick and his cocaine suppliers, but withheld any information about Charles Riddick Sr., the Petitioner, or her own involvement in the prison drug smuggling. *Id.* at 141–142. On June 26, 1992, Ms. Cordero turned over to the police a quantity of Kenneth Riddick's cocaine on the Petitioner's behalf. *Id.* at 143–45. Ms. Cordero, however, never told the authorities about Riddick Jr. and Sr.'s continuing drug activities, or her involvement with them, until she was arrested in 1995.

As the history of this case bears out, Ms. Cordero never acted as an informant against the Petitioner. Instead, at the Petitioner's request, and with his knowledge and consent, Ms. Cordero disclosed selected pieces of information regarding Kenneth Riddick's activities to the police. She deliberately withheld any information that she believed might hurt the Petitioner. Ms. Cordero remained a loyal accomplice and coconspirator with the Petitioner until the conspiracy ended. Therefore, Petitioner's claim that he could not have conspired with Ms. Cordero during 1992 is meritless, as is his claim that Petitioner was entitled to any notes of Ms. Cordero's meetings where she served as an informant against him.

### 3. Petitioner's Alleged Lack of Competency at Trial Due to Drug Use

■ Petitioner asserts, for the first time in his § 2255 Motion, that he was high on drugs and alcohol during both his trial and sentencing. He argues that he was therefore incompetent to stand trial, waive his right to testify, or to assist his counsel at sentencing. Petitioner also claims that the court should have noticed Petitioner's drug use and ordered a competency hearing, and that Petitioner's counsel was ineffective for failing to notice his drug use and request a competency hearing. We will deal with Petitioner's first two arguments here. Petitioner's third drug related claim will be considered in the next section which deals with the ineffective assistance of counsel issues.

■ Petitioner's claims that his own illegal drug use rendered him incompetent to stand trial, waive his right to testify, or to assist his counsel at sentencing must be dismissed for a variety of reasons. First of all, Petitioner failed to raise these arguments either at trial or on his direct appeal. He is therefore procedurally barred from raising these claims for the first time in his § 2255 motion. The Supreme Court has held that if a § 2255 petitioner fails to properly raise an issue at trial or on direct appeal, he will be procedurally barred from raising the issue in a collateral attack unless he can show cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816, *rehearing den.* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993). To show "cause," a petitioner must demonstrate that the reason for failing to raise the issue is something that cannot be fairly attributed to him. Had Petitioner been high during the course of the trial and sentencing, as he suggests, then the Petitioner would be the only person with first hand knowledge of the issue. Any failure to raise this issue on appeal is therefore fully attributable to the Petitioner. Thus, Petitioner is procedurally barred from raising this issues for the first time in the instant motion. Yet, even if Plaintiff's complaint that he was entitled to a competency hearing based on his

alleged drug use were not procedurally barred, it would still have to be denied.

The Third Circuit has had said little on the topic of a defendant's drug use during trial. However, ample case law makes it clear that the crux of the issue raised by the Petitioner is not whether he had been high on marijuana and alcohol during the course of his trial and sentencing, but whether Petitioner was in fact competent during his trial. *See Watts v. Singletary*, 87 F.3d 1282 (11th Cir.1996), *cert. denied* — U.S. ——, 117 S.Ct. 2440, 138 L.Ed.2d 200 (1997)(court did not err in not holding a competency hearing for a defendant that it suspected was using drugs at the time of trial); *Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir.1987)(drug use does not, per se, necessitate a competency hearing); *United States v. Ridley*, 12 M.J. 675, 677 (ACMR 1981)(question is not whether defendant had ingested drugs, but whether he was able to participate in his defense); *Williams v. United States*, 500 F.2d 42, 44 (10th Cir.1974)(fact that defendant was undergoing methadone treatment at time of guilty plea does not render him incapable of waiving his constitutional rights); *Walden v. United States*, 418 F.Supp. 386, 388 (E.D.Pa.1976)(evidence of some drug use is not enough to establish as a matter law that a defendant is incompetent). Indeed, even if a defendant has taken drugs while on trial, "[t]o be entitled to a [competency] hearing a defendant must present evidence demonstrating that the dosage given him has affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceeding against him." *Watts*, 87 F.3d at 1287 (*quoting Fallada*, 819 F.2d at 1569). No such evidence ever existed in Petitioner's trial.

We had the opportunity to observe Petitioner throughout his week long trial and his sentencing. It is our clear recollection that Petitioner appeared lucid, attentive and aware at all times. Petitioner spoke clearly and competently when we colloquied him regarding both his Fifth Amendment rights and on issues related to his sentencing. Petitioner never gave any sign to this court that he was incompetent or unable to assist his attorney in his defense.

As one court has recognized, "[b]ecause legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether defendant's competency is suspect." *Watts*, 87 F.3d at 1288. Thus, "failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that defendant's competency was not really in doubt...." *Id.* The mere fact that Petitioner's counsel, Mr. Donatoni, never saw the need to ask for a competency hearing strikes a blow at the heart of Petitioner's argument. This blow is even further strengthened by a sworn affidavit from Petitioner's trial counsel stating that at no time during trial or sentencing did it appear that Petitioner was high on drugs or otherwise incompetent in any way, shape or form. Indeed, Mr. Donatoni swears that not only did he see "no evidence whatsoever to indicate that Mr. Riddick was under the influence of any drug, narcotic or alcohol during the pre-trial state, negotiation of a plea, or during the trial or at sentencing," but that counsel "was impressed with the level of understanding exhibited by Mr. Riddick...." *Affidavit of Trial Counsel* at 2. Trial counsel also attests to the fact that he was never "alerted to or even suspicious of any lack of capacity, diminished capacity or incompetence to understand the nature of the proceedings, the role of counsel and the options that were presented to [the Petitioner]," and concludes that "at all times relevant hereto, Mr. Riddick was fully competent and cognizant of the proceedings and had input into all aspects of the pre-trial stage, trial and sentencing." *Id.*

Petitioner was also observed throughout his trial by Deputy U.S. Marshal Brian Hicks. According to Mr. Hicks's affidavit, he has, in the course of his 8 years as a Deputy Marshal, dealt with more than 100 prisoners who were under the influence of controlled substances. Mr. Hicks dealt with the Petitioner on a daily basis during the pre-trial hearings and the trial itself. Mr. Hicks attests that "[a]t no point during the pretrial or trial hearings did the defendant ... appear

to be under the influence of controlled substances. His speech was articulate and there was no outward appearance of drug usage in his eyes, speech, or body language." *Hicks Aff.*

Deputy U.S. Marshal B.J. Flater was in charge of producing the Petitioner to the District Court for sentencing. Mr. Flatter has been a Deputy U.S. Marshal for almost thirteen years and has dealt with at least 150 federal prisoners who were, by their own admission, under the influence of mind or mood altering drugs. Mr. Flater attests that "[a]t no time during my contact with Mr. Riddick, on that day or any other, did I detect or suspect that he was under the influence of prescription medication, alcohol or controlled substances. Mr. Riddick comported himself in a reasonable and appropriate manner at all times while in my presence." *Flater Aff.*

■ Even if Petitioner had consumed drugs before his trial and sentencing, neither this court, defense counsel, nor the marshals in charge of guarding the Petitioner observed any signs that Petitioner was in any way incompetent. So, while it is true that "[w]here significant evidence does come to the attention of the district court that defendant has recently taken drugs, the court has the obligation to inquire further before determining that a competency hearing is not necessary," *United States v. Cole,* 813 F.2d 43, 47 (1987), this court was not under any obligation to hold a competency hearing. "The obligation of a court to initiate an inquiry into a defendant's competency accrues upon its observation of occurrences which, when contemplated collectively, generate a real, substantial and legitimate doubt as to the mental competency of a defendant to meaningfully comprehend, participate and cooperate with his counsel during the proceeding." *United States ex rel. Trantino v. Hatrack,* 408 F.Supp. 476, 483 (D.N.J.1976), aff'd 563 F.2d 86 (1977), *cert. denied* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978). No such occurrences existed in Petitioner's case. This court had no reason at trial or sentencing to think that the Petitioner was using illegal drugs or was otherwise incompetent.

■ Furthermore, even though the Petitioner has a substantive due process right to not be tried and convicted while incompetent, *Pate v. Robinson,* 383 U.S. 375, 377, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), it is up to him to prove by the preponderance of the evidence that he was incompetent at the time of trial. *Watts,* 87 F.3d at 1290; *United States v. Velasquez,* 885 F.2d 1076, 1089 (3d Cir.1989), *cert. denied* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). Petitioner has failed to do so. Indeed, there were no signs whatsoever that Petitioner was unable to follow his trial or assist his attorney. This conclusion becomes all the more evident when one compares the Petitioner's case to that of the defendant in *Watts.* In that case the defendant slept throughout 70% of his trial. *Watts,* 87 F.3d at 1287. The appellate court stated that it had no doubt that "both the trial judge and Watt's attorney, who were aware of Watts's history of drug use and his release on bond throughout trial, suspected that Watts's sleeping was related to contemporaneous drug use." *Id.* Yet, the circuit court still determined that the district court erred in granting the defendant's habeas corpus motion since the record was devoid of substantial evidence that Watts could not adequately understand the proceedings against him. *Id.* Whereas the defendant in *Watts* provided at least some evidence of his incompetence, Mr. Riddick has provided no evidence of his incompetence except a blanket assertion in an affidavit that he had taken drugs during the course of his trial and sentencing.

Indeed, given the observations of this court, Petitioner's own attorney, and two U.S. Marshals, we find Petitioner's assertion that he had taken drugs during the course of his trial and sentencing to be incredible. Petitioner's claim becomes even more unlikely when one considers that no controlled substances were ever found on Petitioner's person or in his personal effects during the course of the trial and that for Petitioner's claims to be true he would have had to smuggled drugs into at least two different prisons. *Hicks Aff.* We have little doubt that a man, such as the Petitioner, who is already facing life imprisonment would have

any compunction about manufacturing this claim to try to obtain a new trial.

Be that as it may, even if Petitioner's claim that he had taken illegal drugs at the time of his trial and sentencing were true, he would still not be entitled to relief since there is no evidence that Petitioner was in any way incompetent. Therefore, even if Petitioner's claim had not been procedurally defaulted, it would still be denied without a hearing. *See Vicars v. United States,* 488 F.2d 531, 532 (5th Cir.1973)(not error to deny a hearing to a habeas petitioner who claimed that he was taking drugs during trial when that claim was general and conclusory and the trial judge had ample opportunity to observe the petitioner's demeanor and appearance).

### B. Ineffective Assistance of Counsel Claims

#### 1. Standard

· The right to assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the Supreme Court; it cannot be denied to a defendant absent intentional and actual waiver. *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Supreme Court has set out a two-prong test to establish a claim of ineffectiveness of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must show both that: (1) his counsel's conduct was deficient and "fell outside the wide range of professionally competent assistance" and (2) the petitioner was prejudiced as a result of that deficient conduct. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *United States v. DeRewal,* 10 F.3d 100, 104 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

To satisfy the first prong, deficiency, a petitioner must show that his lawyer's conduct fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. We may not use the benefit of hindsight to second-guess tacti-

cal decisions made by an attorney unless they are unreasonable. *See id.* at 690, 104 S.Ct. 2052; *Diggs v. Owens,* 833 F.2d 439, 444–45 (3d Cir.1987), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988)("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential"). Moreover, the mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

If the first prong is proven, a petitioner must also prove the second prong, prejudice. To show prejudice, a petitioner must show that there is a reasonable probability that there would have been a different outcome; that the deficient performance "deprived the defendant of a trial whose result is reliable." *DeRewal,* 10 F.3d at 104, *citing Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We must examine the trial with our focus not on the outcome, but on whether the error so affected the adversarial balance that the trial was rendered unfair and the verdict rendered suspect. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying this jurisprudence to Petitioner's case, it becomes obvious that each of Petitioner's ineffective assistance of counsel claims must fail.

#### 2. Counsel was not Ineffective for Failing to Demand a Competency Hearing or to allow Petitioner Waive His Right to Testify

█ Petitioner tries to rehash his claim that he is entitled to a new trial because he allegedly broke the law and ingested illegal drugs while in prison during the course of his trial and sentencing for a second time through the guise of ineffective assistance of counsel. Petitioner's argument is no more persuasive the second time around. Given that neither this court nor the two marshals guarding the petitioner observed him to be

under the influence of drugs or alcohol (or to be anything other than competent), we cannot hold that Petitioner's trial lawyer was ineffective for failing to ask for a competency hearing. And, Petitioner has failed to show actual prejudice since we would have denied any request to declare Mr. Riddick incompetent.

### 3. Counsel was not Ineffective for Failing to Correct BNI Agent Serfass's Testimony

■ Petitioner contends that his trial counsel was ineffective when he failed to impeach or correct the testimony of BNI Agent Serfass when the agent stated that Ms. Cordero began cooperating with the government because the Petitioner was serving a two and a half to five year sentence in the Lehigh County Prison and that she was hoping that her cooperation would help the Petitioner be released sooner. Petitioner, though in jail, was not serving a prison sentence at that time—he was facing such a sentence.

We do not believe that Mr. Donatoni's failure to correct that statement falls below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Agent Serfass made a one word misstatement that did not even go to the heart of the topic he was discussing. Agent Serfass was merely trying to explain why Ms. Cordero had cooperated with the government— whether Petitioner was in jail awaiting a trial or serving a sentence did not materially effect the gist of his testimony. Many a lawyer may not have picked up on the misstatement in time to object. It is easy, once a trial is completed, to go back over the transcript with a fine toothed comb and, using 20/20 hindsight, find slightly inaccurate or objectionable testimony. It is much harder to pick up on each and every mistake during the heat of the trial itself. So, while in a perfect world Petitioner's lawyer would have corrected Agent Serfass, we cannot say that this one, minor mistake rendered counsel ineffective.

Furthermore, as we have stated, the Agent's minor misstatement in no way affected the ultimate point of his testimony. There is slight difference between Ms. Cordero trying to help the Petitioner because he was facing a 2–5 year sentence and Ms. Cordero trying to help the Petitioner because he was serving a 2–5 year sentence. Indeed, no reasonable probability exists that but for this error, the result of the trial would have been different. *See Strickland,* 466 U.S. at 687–96, 104 S.Ct. 2052; *United States v. Kauffman,* 109 F.3d 186, 190 (3d Cir.1997). Therefore, since Petitioner cannot show that his counsel was ineffective or that the minor mistake prejudiced his trial, this ineffective assistance of counsel claim must fail.[1]

### 4. Counsel was Not Ineffective for Failing to Move for a Mistrial

■ Petitioner argues that his trial lawyer was ineffective for failing to move for a mistrial after Petitioner's cousin, Juanita Riddick, spoke to one of the jurors during the trial. This contention is utterly without merit.

On the morning of May 23, 1998, the court informed the government and defense counsel that a juror had notified the court staff that a trial spectator had followed him during the lunch recess on two occasions. After informing the parties, we held a voir dire of the jurors involved in open court, in the presence of the defendants and all counsel.

Juror 1 testified that a trial spectator, who appeared to be a relative of the defendants, followed him from the courthouse during lunch breaks on two days. *Tr. 5/23/95* at 3. Juror 1 stated that Juror 3 was with him on one day when he was followed. *Id.* at 7. Juror 1 also testified that Juror 2 told him that the same person, a woman, approached him at his motel and "propositioned" him. Juror 1 stated that Juror 2 told him that he turned the woman down. Juror 1 noted that the same woman had followed him from the courthouse, but had never said anything to

---

1. Petitioner further claims that the government suborned perjury by not correcting this misstatement in the agent's testimony. Inasmuch as the error was so insignificant that the government did not notice its inaccuracy at the time of the testimony, we find that the government did not suborn perjury. Defendant's claim is without merit.

him. *Id.* at 5–7. Juror 1 testified that he decided to raise the issue with the court because he "had a general concern" and "was not comfortable about someone following [him] around." *Id.* at 3. When asked by the court, Juror 1 clearly stated that he still felt he could be fair and impartial in the case. *Id.* at 4.[2]

Juror 2 testified that he was approached by a woman named "Juanita," who told him that her relatives were on trial. Juror 2 testified that Juanita had asked him where he was from, where he was staying, and whether he was married. *Id.* Juror 2 told the court that he had mentioned the incident to two other jurors—Alphonzo Miller and Steve. Juror 2 testified that he could be fair and impartial in deciding the case. *Id.* at 9–10.

Juror 3 testified that he was not with Juror 2 when Juror 2 mentioned being followed and that he had not heard anything about jurors being followed. Juror 3 stated that he could be fair and impartial in the case. *Id.* at 11.

Juror Alphonzo Miller testified that he had not noticed any jurors being followed, nor had he heard any rumors of such behavior. This juror also told the court that he could be fair and impartial. *Id.* at 12.

We asked the defendants, through their counsel, whether they wanted any further questions asked of any of the jurors. All defense counsel conferred with their clients and advised the court that the defendants did not wish to have any more questions asked of the jurors.

The facts show that a cousin of the Petitioner, Juanita Riddick, attempted to speak to one of the jurors. Despite Petitioner's ridiculous claims, his cousin was not an "emissary of the government." The juror cut off Juanita's attempt to speak with them, giving her no opportunity to voice anything of significance. The court concluded an exhaustive voir dire of any and all jurors who may have heard, even second hand, about the incident. Two jurors testified that they knew nothing

about the incident. The two jurors who were aware of the incident stated that it made no substantial impression on them and that they could continue to remain fair and impartial. Petitioner has therefore failed to show any actual basis on the part of any juror.

■■■■ Since Petitioner has failed to show any bias on behalf of the jurors, he has failed to show that his counsel was ineffective. Indeed, a new trial is not required "every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Rather, it is the defendant's burden to show actual bias. *Id.* The trial court may conduct an inquiry to determine whether there has been prejudicial impact and has broad discretion in its decision regarding extraneous influences on the jury. *United States v. Console*, 13 F.3d 641, 667 (3d Cir.1993), *cert. denied* 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994). We find that there was no bias in this case. Therefore, counsel cannot be deemed ineffective for failing to ask for a mistrial. Furthermore, since there was no bias, Petitioner cannot show the actual prejudice necessary to succeed on an ineffective assistance of counsel claim. Indeed, the fact that Petitioner was consulted by his counsel at the conclusion of the hearing and informed the court, through his counsel, that he did not want any remedial action taken, *see Tr. 5/23/95* at 14, underscores the meritlessness of Petitioner's claim.

### 5. Counsel was Not Ineffective for Failing to Examine a Witness About His Motive for Testifying

■■■■ Petitioner makes vague allegations that his counsel was ineffective for failing to cross-examine David Lowy on his motive for testifying. Petitioner seems to be referring to the fact that Lowy wrote to the government before trial offering to provide additional information about unrelated matters in

2. Despite Petitioner's claims otherwise, the court did not abruptly cut off Juror 1 when he attempted to explain the details what happened. The juror freely discussed the events that transpired,

was not confined to answering narrow questions, and even volunteered information when no question was pending. *Id.* at 6–7.

return for unspecified assistance with Mr. Lowy's pending state charges.

Though we ruled that defense counsel could question Mr. Lowy about the fact that he had offered to assist the government in other matters, Petitioner has failed to show that his attorney's decision not to cross-examine the witness in matters unrelated to the defendant's case fell bellow an objective standard of reasonableness. Indeed, we believe it to be highly questionable whether this tactic would have helped the Petitioner's case. And we hold that there is no evidence that, but for the omission, the result of the trial would have been any different. Therefore, this ineffective assistance of counsel claim too must fail.

### 6. Counsel did not Deny Petitioner Effective Assistance by Conceding Petitioner's Guilt

■ Petitioner alleges that his trial counsel conceded his guilt during the closing argument. Petitioner accuses his lawyer of telling the jury that though he thinks a person accused of a crime may be guilty, he hopes that he can get the case. Thus, Petitioner believes that his attorney conceded his guilt. Petitioner totally misconstrues this portion of his counsel's closing argument. What Mr. Donatoni really told the jury was this:

> [My wife and I will] read a newspaper article, "Investigation of Embezzlement at West Chester Packaging Company," and a couple of thoughts will go through our minds, we'll talk about it and we'll say, well, I wonder what's happening there? Another thought going through my mind is, I hope I get the case someday, if that case is coming.
>
> But more importantly then a couple of days later you may read an article that says, "CEO Jones Arrested for Embezzlement at the West Chester Packaging Company" and I think a normal reaction among many of us, in our homes … is, Hey Rob, they got the guy that stole the money from the West Chester Packaging Company. And that's from me who as a lawyer, who as my vocation and advocation is in the courts … that's a natural reaction, and

perhaps, folks, a luxury and a privilege that we have in our homes. Because what we talk about in our homes and in the privacy of our homes, is a little bit different than the—than the position you folks are in now. Why? Because you've taken an oath as jurors and that makes you special, that makes you different.

*Tr. 5/24/95* at 68–69.

Mr. Donatoni then went on to talk about how the jury could only find the Petitioner guilty if the government proved its case beyond a reasonable doubt. *Id.* at 70–71. It is clear that Mr. Donatoni did not concede the Petitioner's guilt; counsel merely told a story to emphasize that the jury has a much greater burden and must adhere to a much stricter standard in deciding the case in the courtroom than they would if they were just bantering about the case at home. Petitioner's claim that his attorney conceded his guilt is simply preposterous.

Petitioner also claims that defense counsel was more concerned about how the jury viewed him personally, than with providing his client with diligent and effective representation. We disagree. We witnessed the entire six day trial and Mr. Donatoni did a fine job in representing the Petitioner. At no time did Mr. Donatoni put his interests above Mr. Riddick's. Thus, Petitioner's fifth ineffective assistance of counsel claim is completely devoid of merit.

### 7. Petitioner's Attorney was Not Ineffective at Sentencing for Failing to Object to the Allegedly Untimely Filing of an Information of Prior Conviction

■ Petitioner asserts that the government did not timely file an information of prior conviction under 21 U.S.C. § 851, and that the prior conviction information was used to increase his sentencing guidelines range.

Section 851 requires the government to file an information of prior conviction in order to trigger the doubling of statutory minimum penalties under 21 U.S.C. § 841. The information must be filed prior to the commencement of jury selection. *See e.g., United States v. Johnson,* 944 F.2d 396 (8th Cir.),

*cert. denied* 502 U.S. 1008, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991).

In this case, we initially tried to seat a jury on May 8, 1995. However, due to an insufficient number of jurors in the panel, we did not have enough jurors to allow all parties to exercise preemptory challenges. We therefore dismissed the original panel and ordered that jury selection would recommence with a completely new panel on May 15, 1995. The government filed its information of prior conviction on the morning of May 15th, before jury selection began. Therefore the government's information was timely filed.

Furthermore, even if the information had not been timely filed, Petitioner has failed to show actual prejudice. The filing of the information had nothing to do with the calculation of his sentencing guidelines. The filing of the information merely triggered the doubling of the Petitioner's statutory minimum sentence, from 10 to 20 years. The filing of the information did not, however, affect the Petitioner's criminal history score or category. The Petitioner's guideline ranges was 360 month to life imprisonment. Therefore, the timeliness of the filing of the information was irrelevant to the Petitioner's sentence. Petitioner's counsel was not ineffective. This claim is meritless.

*8. Trial Counsel did not Ineffectively Fail to Object to the Drug Quantity Calculation*

Petitioner claims that his counsel failed to object to the drug quantity calculation during sentencing. Nothing can be farther from the truth. Counsel objected vigorously to all aspects of the drug quantity calculation at the sentencing hearing and on appeal. Much of the sentencing hearing was in fact devoted to Petitioner and his co-defendant's objections to the drug quantity attributed to him. *Tr. 8/22/95* at 16–17. Petitioner seeks to reargue the same points already decided by this court at sentencing and by the Third Circuit on appeal. This claim is therefore frivolous.

### III. CONCLUSION

All of Petitioner's substantive and ineffective assistance of counsel claims are equally without merit. Petitioner's motion for relief under § 2255 is therefore denied. An appropriate order follows.

### *ORDER*

AND NOW, this 16th day of July, 1998, upon consideration of Charles Riddick, Jr.'s January 22, 1998 Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and the Government's June 23, 1998 Response thereto, it is hereby ordered that Petitioner's Motion is **DENIED**.